STATE OF CONNECTICUT *v.* SANTOS MIRANDA
(AC 14439)

Foti, Landau and Dupont, Js.

Argued September 24, 1999—officially released January 4, 2000

*Susan M. Cormier*, with whom were *Kenneth J. Bartschi* and, on the brief, *Daniel J. Krisch, Bageshree Ranade Blasius* and *Keith R. Rudzik*, certified legal interns, for the appellant (defendant).

*Robert J. Scheinblum*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Elpedio Vitale*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. This case returns to us from our Supreme Court.[1] On remand, the defendant, Santos Miranda, claims (1) that our Supreme Court has newly created a duty arising under General Statutes § 53a-59 (a) (3)[2] requiring any person living in a family-like situation to protect a child from parental abuse or risk conviction under the statute; *State* v. *Miranda*, 245 Conn. 209, 230, 715 A.2d 680 (1998); and, that as applied to him, his right to due process under the fourteenth amendment to the United States constitution has been violated, (2) that the trial court had insufficient evidence to convict him of assault in the first degree in violation of § 53a-59 (a) (3) and risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21,[3] and (3) that his multiple convictions violate the constitutional prohibition against double jeopardy.[4] We affirm the trial court's judgment as to the conviction under § 53-21 and

---

[1] See *State* v. *Miranda*, 245 Conn. 209, 715 A.2d 680 (1998).

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[3] General Statutes (Rev. to 1993) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[4] Because of our resolution of the defendant's first claim, it is not necessary to review his double jeopardy claim.

reverse the judgment as to the conviction on the counts under § 53a-59 (a) (3).[5]

The following facts and procedural history are necessary for our resolution of the defendant's claims. In January, 1993, the defendant, who was twenty-one, resided in Meriden with his girlfriend, who was sixteen, and her two children, a boy, two years old, and a girl, four months old (baby). Although the defendant had been living with his girlfriend and her children for almost one year, he was not the biological father of either child. The trial court concluded, however, that the defendant had established a family-like relationship with the two children and their mother because he, along with his girlfriend, assumed responsibility for the care and welfare of the children.

On the night of January 27, 1993, the defendant telephoned 911 seeking emergency medical assistance because the baby was allegedly choking on milk. Steven Cushing, an emergency medical technician who responded, observed that the baby was seriously ill and her condition was not consistent with the reason for the emergency call, i.e., choking on milk. The baby was taken by ambulance to Veterans' Memorial Hospital in Meriden and from there by Life Star helicopter to Hartford Hospital.

The medical personnel at Hartford Hospital found that the baby had multiple rib and skull fractures, soft tissue bruises in unusual places, a brachial plexus injury, a rectal tear and bilateral subconjunctival nasal

---

[5] In its brief on remand, the state agrees with the defendant that his assault convictions rested on two omissions, which led to two, not six, discrete injuries. The state consequently asked that we affirm the defendant's conviction on counts five and ten of the information only, which charge the defendant with recklessly engaging in conduct that created a risk of death to another person resulting in multiple skull fractures and a rectal tear. The defendant was convicted of six counts of assault in the first degree. We reverse the judgment as to all of the counts.

hemorrhages. None of the injuries was the result of falling, accident, birth, efforts to resuscitate, blocked air passages or choking on milk. The baby had no clotting or platelet system pathology. According to expert medical testimony, the baby was suffering a textbook case of battered child syndrome.

The defendant and his girlfriend were interviewed by investigators from the department of children and families and the Meriden police. The defendant subsequently was arrested[6] and charged in a twenty-six count information. The information on the six counts of first degree assault charged the defendant with acts of omission, not commission. The trial court found the defendant guilty of assault in the first degree under the second, third, fifth, seventh, eighth and tenth counts,[7] and risk of injury to a child under the twenty-sixth count of the information. The trial court found the defendant not guilty as to the remaining counts of the information. The defendant was sentenced to forty years incarceration.

The defendant appealed his conviction to this court. We upheld the defendant's conviction on the risk of injury to a child charge due to inadequate briefing, but reversed the conviction on the first degree assault charges because we concluded that § 53a-59 (a) (3) did not impose a duty on the defendant to act under the circumstances of this case. See *State* v. *Miranda*, 41

---

[6] The defendant's girlfriend was also arrested and charged with having caused the baby's injuries. Following the defendant's trial, she pleaded guilty pursuant to the *Alford* doctrine. See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[7] The information charges the defendant with first degree assault for three different acts: (1) failing to prevent the baby from living in a situation that created a risk of death and caused her serious physical injury; (2) causing the baby's injuries by means of a dangerous instrument; and (3) engaging in conduct that created a risk of death to another person and thereby caused the baby serious physical injury that resulted in two distinct injuries, multiple skull fractures and a rectal tear.

Conn. App. 333, 341, 675 A.2d 925 (1996), rev'd, 245 Conn. 209, 715 A.2d 680 (1998). The state appealed. A divided Supreme Court reversed, holding that under the circumstances of this case, the defendant had a duty to protect the baby and to prevent further harm, and that by breaching that duty he could be found guilty of assault in the first degree in violation of § 53a-59 (a) (3). See *State* v. *Miranda*, supra, 245 Conn. 230. The Supreme Court remanded the case to us to consider the defendant's remaining claims and his constitutional claims arising from his breach of the duty the Supreme Court concluded existed under § 53a-59 (a) (3). Id., 231–32 n.25.[8]

I

The defendant's first claim is that, as applied to him, the newly stated duty requiring any person living in a family-like situation to protect a child from parental abuse or to risk conviction of assault in the first degree in violation of § 53a-59 (a) (3) violates his right to due process under the fourteenth amendment to the United States constitution. Specifically, the defendant claims that no person of ordinary intelligence could have foreseen (1) that *conduct* within the meaning of § 53a-59 (a) (3) includes the failure to act, (2) that § 53a-59 (a) (3) imposes a duty on parents to act affirmatively to protect their children from abuse and (3) that this duty extends to a person who assumes a familial, although not a legal, relationship to the children. We agree with the last of the defendant's claims.

The Supreme Court concluded that the defendant had a duty under § 53a-59 (a) (3) and that the trial court concluded correctly that he breached that duty. Our

---

[8] Our Supreme Court permitted the defendant to brief his claim of insufficient evidence concerning the risk of injury to a child conviction and any constitutional claims of due process and double jeopardy arising out of its decision. See *State* v. *Miranda*, supra, 245 Conn. 231–32 n.25.

question is whether it is a violation of the defendant's right to due process to uphold his conviction if, at the time of his alleged conduct, he could not have known that such a duty existed. The defendant claims that " '[w]hen a[n] . . . unforeseeable state-court construction of a criminal statute is applied retroactively to subject a person to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime.' *Bouie* v. *Columbia*, 378 U.S. 347, 354–55, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964); see *Douglas* v. *Buder*, 412 U.S. 430, 432, 93 S. Ct. 2199, 37 L. Ed. 2d 52 (1973)." *State* v. *McGann*, 199 Conn. 163, 177, 506 A.2d 109 (1986).

" 'The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.' " *Bouie* v. *Columbia*, supra, 378 U.S. 351, quoting *United States* v. *Harriss*, 347 U.S. 612, 617, 74 S. Ct. 808, 98 L. Ed. 989 (1954). " '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law' . . . ." (Citation omitted.) *Bouie* v. *Columbia*, supra, 351, quoting *Connally* v. *General Construction Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926). "There can be no doubt that a deprivation of the right of fair warning can result not only from vague statutory language but also from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie* v. *Columbia*, supra, 352.

" '[T]he objection of vagueness is twofold: inadequate guidance to the individual whose conduct is regulated, and inadequate guidance to the triers of fact. The former objection could not be cured retrospectively by a ruling either of the trial court or the appellate court, though it might be cured for the future by an authoritative judicial gloss. . . .' [P.] Freund, The Supreme Court and Civil Liberties, 4 Vand. L. Rev. 533, 541 (1951). See [A.] Amsterdam, Note, 109 U. Pa. L. Rev. 67, 73–74, n.34. If this view is valid in the case of a judicial construction which adds a 'clarifying gloss' to a vague statute, id., at 73, making it narrower or more definite than its language indicates, it must be a fortiori so where the construction unexpectedly broadens a statute which on its face has been definite and precise. Indeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, § 10, of the Constitution forbids. An ex post facto law has been defined by this Court as one 'that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action,' or 'that aggravates a crime, or makes it greater than it was, when committed.' *Calder* v. *Bull*, 3 Dall. 386, 390 [1798]. If a state legislature is barred by the Ex Post Facto Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Bouie* v. *Columbia*, supra, 378 U.S. 353–54.

The question we must determine is whether applying our Supreme Court's construction of § 53a-59 (a) (3), which held that any person living in a family-like situation has a duty to protect a child from parental abuse, violates the defendant's due process rights because the defendant did not have fair warning of the prohibited conduct. See id., 350. More specifically, we must determine whether a person of ordinary intelligence in the

defendant's place would have known that he had a duty to help the baby in the circumstances of this case. We conclude that he would not have known.

When this case was initially appealed to this court, a panel of three judges were of the opinion that, as a matter of law, a person who is not the biological or legal parent of a child did not owe that child a duty such that the failure to act would sustain a criminal conviction of assault in the first degree in violation of § 53a-59 (a) (3).[9] On appeal to our Supreme Court, in a concurrence, Justice Palmer noted that the legal duty the Supreme Court recognized in this case had never been expressly recognized in this state before. "In such circumstances, it is by no means clear that the due process clauses of the federal and state constitutions permit such a duty to be imposed on this defendant for purposes of criminal liability under the assault statute." *State* v. *Miranda,* supra, 245 Conn. 232 (*Palmer, J.,* concurring).

Likewise, then Justice McDonald,[10] in the dissenting portion of his opinion wrote, "Whether one who does not personally inflict the physical injury may be held liable under the assault statute for failure to seek medical treatment and whether a worsening of the victim's condition because of that failure is required, whether a failure to report continuing abuse may support liability for assault, and whether this doctrine should be restricted to cases of child abuse are questions I believe we must address." Id., 235 (*McDonald, J.,* concurring in part, dissenting in part).[11]

---

[9] "A failure to act when one is under no legal duty to do so, thereby permitting a dangerous condition to exist, is not sufficient to support a conviction for assault in the first degree pursuant to § 53a-59 (a) (3)." *State* v. *Miranda,* supra, 41 Conn. App. 338.

[10] He is now Chief Justice of our Supreme Court.

[11] In distinguishing *People* v. *Wong,* 81 N.Y.2d 600, 619 N.E.2d 377, 601 N.Y.S.2d 440 (1993), Chief Justice McDonald noted that "New York's penal law defines 'omission' as 'a failure to perform an act as to which a duty of performance is imposed by law.' N.Y. Penal Law § 15.00 [3] (McKinney 1998);

In an emotional dissent, Justice Berdon railed against the horrendous facts presented by this case, but stated, "The rule of law must be upheld even when confronted with alarming allegations of improper acts, indeed allegations of loathsome conduct on the part of the defendant." Id., 236 (*Berdon, J.*, dissenting). Justice Berdon agreed with this court's holding that "§ 53a-59 (a) (3) does not include the 'omission to act.'" Id., 241.

" 'Duty is a legal conclusion about relationships between individuals, made after the fact . . . . The nature of the duty, and the specific persons to whom it is owned, are determined by the circumstances surrounding the conduct of the individual.'" *Clohessy* v. *Bachelor*, 237 Conn. 31, 45, 675 A.2d 852 (1996). "Although one generally has no legal duty to aid another in peril . . . there are four widely recognized situations in which the failure to act may constitute breach of a legal duty: (1) where one stands in a certain relationship to another; (2) where a statute imposes a duty to help another; (3) where one has assumed a contractual duty; and (4) where one voluntarily has assumed the care of another." *State* v. *Miranda*, supra, 245 Conn. 221. Our Supreme Court recognized that the facts of this case as applied to the statute involved was an issue of first impression in this jurisdiction. Id., 220 n.13. Nonetheless, the Supreme Court created a common-law duty to act under the circumstances of this case based on a combination of factors one and four, after reviewing the case law from this jurisdiction and in several other jurisdictions concerning statutes other than § 53a-59 (a) (3). Id., 224–28.

Using the test enunciated in *Bouie* v. *Columbia*, supra, 378 U.S. 347, we conclude that no person of

see also *People* v. *Steinberg*, 79 N.Y.2d 673, 680, 595 N.E.2d 845, 584 N.Y.S.2d 770 (1992). Our penal code, however, contains no like provisions respecting omissions except as to criminal attempt under General Statutes § 53a-49." *State* v. *Miranda*, supra, 245 Conn. 235 n.2.

ordinary intelligence in the defendant's place would have had fair notice that § 53a-59 (a) (3) imposed a duty on him to protect the baby from abuse, to secure medical help for her or to report the abuse to the authorities. Three judges of this court and one justice of our Supreme Court agree that under the facts of this case, the defendant had no duty to act and could not be subject to conviction under that statute. Two other justices of the Supreme Court had serious doubts as to whether the new duty could be applied to the defendant without violating his constitutional right to due process. The defendant was, at the time the baby suffered serious, deplorable and life-threatening injuries, a twenty-one year old high school dropout, who had no biological or legal relationship to the baby. If the judges and justices of our Appellate and Supreme Courts cannot agree as to whether the statute put the defendant on notice that he had a duty to protect the baby, we cannot conclude that the defendant would have known that he was committing assault in the first degree when he failed to protect the baby, to secure medical treatment for her or to report the situation to the authorities. We therefore reverse the trial court's judgment convicting the defendant of assault in the first degree in violation of § 53a-59 (a) (3).

II

The defendant's second claim is that the trial court had insufficient evidence to convict him of assault in the first degree in violation of § 53a-59 (a) (3) and risk of injury to a child in violation of § 53-21. In view of our resolution of the defendant's constitutional due process claim in part I, we need address the sufficiency question only with respect to the risk of injury to a child conviction. Specifically, the defendant claims that the state failed to prove he had the requisite mental state. We disagree.

The following additional facts as set forth in the trial court's memorandum of decision are relevant to our resolution of this claim. The trial court concluded that some of the injuries the baby sustained were serious physical injuries within the meaning of General Statutes § 53a-3 (4).[12] Specifically, the baby had two skull fractures that were caused by great force and created a risk of death due to the risk of a lethal brain injury. The baby's skull fractures, which were seven to ten days old when the baby was admitted to Hartford Hospital, were caused by two separate forces of severe magnitude. The baby also sustained serious physical injuries within the meaning of § 53a-3 (4) due to multiple rib fractures. The baby's fractured ribs were caused by severe force and created a risk of death due to the risk of heart and lung perforations and death by asphyxiation.[13] Her rib fractures were approximately three weeks old when the baby was admitted to Hartford Hospital.

The baby also suffered a rectal tear, which was oozing blood at the time of the Hartford Hospital examination and was, therefore, of recent origin. The tear, caused by the forceful insertion of a foreign body into the baby's rectum, was a serious physical injury because it created a risk of death due to an intestinal perforation and overwhelming infection. The baby suffered a brachial plexus injury that affected the mobility of her left arm, which is a serious physical injury within the meaning of § 53a-3 (4). The age of the brachial plexus injury was unknown.

The trial court also found, on the basis of expert medical testimony, that as a result of these injuries, at the time they were sustained and subsequently, the

[12] General Statutes § 53a-3 (4) provides: " 'Serious physical injury' means physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ."

[13] A perforated lung could cause hemorrhaging and thus drowning.

baby would cry and scream. She would have noticeable physical deformities of swelling, bruising and poor mobility. Her ability to take food would be reduced, and at times, the baby's pain would be so great that she could not be consoled. A person seeing the baby would notice her injuries, reactions and deformities.

The various bruises on the baby's right cheek and the subconjunctival hemorrhages could be seen by anyone. The defendant knew of the rectal tear, and he observed swellings on the baby's skull, which he knew should feel hard rather than like jelly. Although he told his girlfriend to take the baby to the hospital, he did nothing to ensure that the baby actually received proper medical attention.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . *State* v. *Crespo*, 246 Conn. 665, 670, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty. . . . *State* v. *Torres*, 242 Conn. 485, 490, 698 A.2d 898 (1997)." (Citation omitted; internal quotation marks omitted.) *State* v. *Rolli*, 53 Conn. App. 269, 271–72, 729 A.2d 245, cert. denied, 249 Conn. 926, 733 A.2d 850 (1999).

"We note that the probative force of the evidence is not diminished because it consists, in whole or in part,

of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Ingram*, 43 Conn. App. 801, 810, 687 A.2d 1279 (1996), cert. denied, 240 Conn. 908, 689 A.2d 472 (1997).

"While the [trier of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be [proven] beyond a reasonable doubt. . . . If it is reasonable and logical for the [trier] to conclude that a basic fact or an inferred fact is true, the [trier] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [trier of fact] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence." (Citation omitted; internal quotation marks omitted.) *State* v. *Schiappa*,

248 Conn. 132, 177–78, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999).

"Each essential element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *King*, [216 Conn. 585, 601, 583 A.2d 896 (1990)]. Finally, in determining whether the [trier of fact] reasonably could have found guilt, we ask if any rational [fact finder] could have done so. *State* v. *Montanez*, [219 Conn. 16, 20, 592 A.2d 149 (1991)]; *State* v. *King*, supra [601]." *State* v. *Jupin*, 26 Conn. App. 331, 337–38, 602 A.2d 12, cert. denied, 221 Conn. 914, 603 A.2d 404 (1992).

Section 53-21 proscribes "two general types of behavior likely to injure physically or impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare and (2) acts directly perpetrated on the person of the minor and injurious to [her] moral or physical well-being." (Internal quotation marks omitted.) *State* v. *Perruccio*, 192 Conn. 154, 159, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984), quoting *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963). The former proscribed conduct applies to the indictment against the defendant in this case.

Unlike § 53a-59, the proscribed behavior is not limited to behavior that creates a risk of death or serious physical injury to another person. The language of § 53-21 applies to behavior that is merely likely to injure the health of the child. "The statute in so far as it applies here prohibits certain *behavior likely to physically injure* a minor . . . . The behavior which is prohibited is the creation of a situation *inimical or harmful to the minor's physical welfare.* . . . The first element is that the defendant's conduct was *wilful.* The word wil-

ful means doing a forbidden act *purposefully* in violation of the law. It means that the defendant acted *intentionally* in the sense that his conduct was *voluntary* and not inadvertent and that he *intended the resulting injury* to the victim. Thus, wilful misconduct is *intentional misconduct*, which is *conduct done purposefully and with knowledge of [its] likely consequences. . . .* The second element is that the defendant *created a situation that was likely to be harmful to the victim's health.* Health means the state of being hale, sound or whole in body, mind or well being. The focus is on whether the situation was such that *harm to [the victim's] health [was] likely to occur."* (Emphasis in original; internal quotation marks omitted.) *State v. Peters*, 40 Conn. App. 805, 824, 673 A.2d 1158, cert. denied, 237 Conn. 925, 677 A.2d 949 (1996) (trial court jury instruction held adequate).

In this case, the trial court heard evidence, which demonstrated beyond a reasonable doubt, that the defendant knew the baby had suffered injuries. The bruises on her face and subconjunctival hemorrhages were visible to anyone looking at her. The defendant saw and felt the swollen areas of the baby's head. Such injuries endangered the baby's health. Although he knew of those obvious injuries as well as the rectal tear, the defendant made the deliberate choice not to seek medical help for the baby prior to his 911 call or to report her injuries to the authorities.

For these reasons, we conclude that there was sufficient evidence for the trial court to find beyond a reasonable doubt that the defendant had the requisite intent to cause injury to the baby or, by failing to protect her, manifested a reckless disregard of the consequences, and to convict him of risk of injury to a child in violation of § 53-21.

The judgment is affirmed as to the conviction under § 53-21. The judgment is reversed as to the conviction

on the six counts under § 53a-59 (a) (3) and the case is remanded with direction to render judgment of not guilty as to those counts.

In this opinion the other judges concurred.