[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The defendant seeks judgment on counts one and two of the plaintiff's substituted amended complaint. For the reasons stated below, the defendant's motion for summary judgment is granted.
 I. BACKGROUND
The following facts are alleged by the plaintiff, Sheila LaFreniere, in her substituted amended complaint against the defendant, Clarence Burns. The plaintiff was appointed administratrix of the estate of the decedent, Ryan DiBiase, by the probate court on July 24, 1997. LaFreniere brings the present action on behalf of the estate as administratrix. On or about September 12, 1995, the fifteen year old decedent and three friends, one of whom was the son of the defendant, were present as licensees in the basement of the defendant's home at 44 Maurice Avenue, Bristol, Connecticut. The boys were making homemade explosive devices known as pipe bombs. The defendant became aware of the boys' conduct and ordered the boys to leave his premises. The boys left the premises still possessing the incendiary materials and went to another location. They proceeded to make a pipe bomb, which exploded, causing fatal injuries to the decedent.
On March 2, 2000, the plaintiff filed her substituted amended complaint, pursuant to § 10-44 of the rules of practice, alleging two counts. Count one alleges negligence per se pursuant to General Statutes § 53-21. The plaintiff claims that the defendant violated § 53-21
by failing to exercise reasonable care to control the boys and by permitting them to leave his premises still possessing dangerous materials, thereby causing the boys to be placed in a situation where their lives were endangered. Count two alleges common law negligence whereby the defendant "negligently failed to take adequate steps to remove incendiary materials from his son and his son's companions, but permitted them to leave the premises still possessed of potentially dangerous materials, though he knew or should have known that the boys were likely to continue their dangerous experiments elsewhere." (Plaintiff's Substituted Amended Complaint, March 2, 2000, Count two, ¶ 4.)
On March 29, 2000, the defendant moved for summary judgment on the following four grounds. First, as to count one, he argues there is no CT Page 6026 evidence that the decedent was injured by the conduct of an adult, that the defendant deliberately placed the decedent in danger or that the defendant inflicted direct harm on the decedent as required for a violation of § 53-21. Second, as to count two, the defendant argues that he did not owe a duty to the decedent and, thus, cannot be found negligent. Third, as to both counts, the defendant argues that public policy dictates against compensation for the decedent's estate because his death resulted from his own illegal activity. Finally, as to both counts, the defendant argues that the plaintiff may not recover because the decedent's death was due to his own ultra-hazardous activity for which he is strictly and solely liable.
In response to the defendant's first ground, the plaintiff argues that the court's memorandum of decision, regarding the defendant's motion to strike, sustained the legal sufficiency of the negligence per se claim pursuant to § 53-21. See LaFreniere v. Burns, Superior Court, judicial district of New Britain, Docket No. 473002 (February 23, 2000,Wollenberg, J.). Furthermore, the plaintiff argues that the prior decision represents the "law of the case." The plaintiff argues in response to the second ground that, pursuant to the Supreme Court's decision in Mendillo v. Board of Education, 246 Conn. 456, 717 A.2d 1177
(1998), the defendant had a duty to the decedent because it was foreseeable that his failure to remove the incendiary devices from the boys would likely result in harm of the nature of that suffered by the decedent. She further argues that public policy dictates that a duty should exist between the defendant and the decedent. In response to the third ground, the plaintiff maintains that it is not clear"that the decedent's conduct was criminal and that the authority relied upon in the defendant's argument was misplaced. Finally, in response to the fourth ground, the plaintiff argues that recovery by an abnormally dangerous actor is not precluded where there was contributing tortious conduct by others, particularly where the actor is an adolescent. The court heard argument at short calendar on January 22, 2001, and after reviewing the relevant pleadings, affidavits and depositions now issues this opinion.
 II. STANDARD OF REVIEW
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of CT Page 6027 any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Miles v.Foley, 253 Conn. 381, 385-86, 752 A.2d 503 (2000). "The test is whether a party would be entitled to a directed verdict on the same facts." Sherwoodv. Danbury Hospital, 252 Conn. 193, 201, 746 A.2d 730 (2000). "Summary judgment in favor of the defendant is properly granted if the defendant in its motion raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Internal quotation marks omitted.) Serrano v. Burns, 248 Conn. 419,424, 727 A.2d 1276 (1999).
"[S]ummary judgment can, in some instances, be supported solely by deposition testimony." Dubay v. Irish, 207 Conn. 518, 534 n. 9,542 A.2d 711 (1988). "In instances where deposition testimony formed the basis for the granting of summary judgment, it should be noted that often the deposition was not the deposition of the movant for summary judgment. . . ." Tryon v. North Branford, 58 Conn. App. 702, 716,755 A.2d 317 (2000). "Summary judgment `is appropriate only if a fair and reasonable person could conclude only one way. . . . The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." Morascini v.Commissioner of Public Safety, 236 Conn. 781, 808-09, 236 A.2d 1340
(1996).
 III. DISCUSSION A. Negligence Per Se
The defendant filed the present motion seeking summary judgment as to count one, negligence per se pursuant to § 53-21, on the ground that the undisputed facts do not amount to a violation of § 53-21 in that the decedent was not injured by the defendant or any adult, that the decedent was not deliberately placed in danger by the defendant and that the decedent was not directly harmed by the defendant. CT Page 6028
"Negligence per se operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort law principles, i.e., that standard of care to which an ordinarily prudent person would conform his conduct." Gore v. People's Savings Bank,235 Conn. 360, 376, 665 A.2d 1341 (1995), on remand, 40 Conn. App. 219,670 A.2d 332 (1996). In order to utilize negligence per se, the plaintiff must, as a threshold matter, prove "(1) that [the decedent was] within the class of persons protected by the statute and (2) that the injury suffered is of the type that the statute was intended to prevent." Id., 368-69.
In the present case, the court, Wollenberg, J., held that the plaintiff alleged sufficient facts to sustain a negligence-per se claim. First, the court held that, because § 53-21 protects children under the age of sixteen and the decedent was fifteen years old at the time of the incident, the decedent was within the relevant class protected by the statute. LaFreniere v. Burns, supra, Superior Court, Docket No. 473002 (February 23, 2000). Second, the court held that the plaintiffs sufficiently alleged that the defendant's conduct placed the decedent and the other youths "in a situation where their lives were endangered." Id. While the court sustained the viability of the negligence per se claim, it did not establish that the defendant was liable for negligence because he violated § 53-21.
"To establish negligence, the jury in a negligence per se case need not decide whether the defendant acted as an ordinarily prudent person would have acted under the circumstances. They merely decide whether the relevant statute or regulation has been violated. If it has, the defendant was negligent as a matter of law." Gore v. People's SavingsBank, supra, 235 Conn. 376. Thus, presently before the court is the issue of whether the plaintiff has established facts sufficient to prove a violation of § 53-21 by the defendant.
Section 53-21 provides in relevant part: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, or its health is likely to be injured or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child shall be fined not more than $500.00 or imprisoned not more than ten years or both."[1] "The general purpose of § 53-21 is to protect the physical and psychological well-being of children from the potentially harmful conduct of adults." State v. Payne, 240 Conn. 766,771, 695 A.2d 525 (1997). Our Supreme Court has determined that "[t]he legislative history of § 53-21 supports the conception of § 53-21
as comprising two distinct parts [creation of a situation and/or commission of an act]. The statute, as it currently exists, was derived CT Page 6029 from two separate legislative enactments. . . . Cases construing §53-21 have emphasized this clear separation between the two parts of the statute. . . ." Id., 773. The court finds as a matter of law that the only part of § 53-21 potentially applicable to the facts alleged in the plaintiff's substituted amended complaint is the first part.[2]
"[T]he first part of § 53-21 prohibits the wilful creation of a `situation' likely to impair the health of a child and thus encompasses the protection of the body as well as the safety and security of the environment in which the child exists, and for which the adult is responsible. The plain language of the first part of § 53-21
indicates the legislature's understanding that there is a broad class of intentional conduct that can put a child's well-being seriously at risk without any physical contact by the perpetrator." Id., 774.
"The statute in so far as it applies here prohibits certain behavior likely to physically injure a minor. . . . The behavior which is prohibited is the creation of a situation inimical or harmful to the minor's physical welfare. . . . The first element is that the defendant's conduct was wilful. The word wilful means doing a forbidden act purposefully in violation of the law. It means that the defendant acted intentionally in the sense that his conduct was voluntary and not inadvertent and that he intended the resulting injury to the victim. Thus, wilful misconduct is intentional misconduct, which is conduct done purposefully and with knowledge of [its] likely consequences. . . . The second element is that the defendant created a situation that was likely to be harmful to the victim's health." State v. Miranda, 56 Conn. App. 298,312-13, 742 A.2d 1276, cert. granted, 252 Conn. 935, 747 A.2d 5 (2000). Thus if the court finds that no genuine issues of material fact exist regarding either of the two elements required to establish a violation of the first part of § 53-21, the defendant's motion for summary judgment must be granted as it relates to count one.
The first element is that the defendant's misconduct must be wilful; that is, done purposefully and with the knowledge of its likely consequences. In the present case, the plaintiff claims that the defendant's misconduct was that he "permitted [the boys] to leave his premises still possessed of potentially dangerous materials." (Substituted Amended Complaint, Count two, ¶ 6.)
The evidence submitted by the parties indicates that there is no issue of material fact as to whether to the defendant intentionally created a situation in which he knew the decedent was likely to be injured. The defendant testified that when he learned the boys were making pipe bombs, he went into the basement of his home and yelled at the boys to "find something else to do." (Deposition of Clarence Burns, March 26, CT Page 6030 1997, p. 38.) In response the boys, including the decedent, "stopped the activity really quick [and] [t]hey got out of the cellar really quick . . . [t]hey knew I meant business . . . I sure wasn't going to stand for the activity that was going on. (Deposition of Clarence Burns, p. 39.) Additionally, other witnesses confirmed that the defendant yelled at the boys, told them to stop making bombs and to get out. (See Deposition of Douglas Thibeault, August 26, 1996, p. 46; Deposition of Scott Dawson II, October 11, 1996, p. 18.) These witnesses also indicated that the defendant did not provide the boys with the raw materials for the bombs and that he was not present when the boys loaded a backpack with the potentially dangerous materials. (See Deposition of Douglas Thibeault, supra, p. 19-20, 46; Deposition of Scott Dawson II, supra, p. 15, 20.) The defendant, when asked if he made "any effort to get [the boys] to discard any matches or pipes before they left," testified "No. I thought they left it behind. I thought it was all — I didn't see nothing. I thought I stopped everything right then and there." (Deposition of Clarence Burns, p. 40.) The defendant also testified that he did not notice if the boys were carrying a backpack when they left. (See Deposition of Clarence Burns, p. 40.)
"The party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such issue." (Internal quotation marks omitted.) Doty v. Mucci, 238 Conn. 800, 808, 679 A.2d 945
(1996). On this record, there is nothing from which a fact finder could conclude there is a sufficient foundation to give rise to a question of fact as to whether the defendant purposefully placed the decedent in a situation in which he knew the decedent was likely to be injured. At best the defendant's conduct can be characterized as careless. Accordingly, the court finds as a matter of law that the evidence submitted would require a directed verdict because no reasonable jury could find that the defendant's alleged misconduct was wilful.
The second element required for a violation of § 53-21 is that the defendant must create a situation likely to be harmful to the victim's health. In the present case, the evidence submitted by the parties demonstrates that there is no question of material fact as to whether the defendant created the dangerous situation. The evidence submitted indicates that two of the boys had a history of making pipe bombs.[3]
Several witnesses testified that eight months before this incident the Bristol police lectured the decedent about the dangers of making pipe bombs after the decedent was caught making such a device with his friend, Douglas Thibeault. (See Deposition of Sheila LaFreniere, June 30, 1997, pp. 33-35; see also, Deposition of Scott Dawson II, pp. 36-37.) Furthermore, the evidence submitted by the parties demonstrates that there is no question of material fact as to whether the defendant CT Page 6031 participated in, or acquiesced in, the making of a pipe bomb. To the contrary, the defendant avers in his affidavit that, upon becoming aware that the boys were making a pipe bomb, "I immediately confronted them, warned them that their conduct was dangerous, demanded they stop and demanded that all of them other than my son, William, leave my property." (Affidavit of Clarence Burns, January 27, 1999, ¶ 3; see also, Deposition of Scott Dawson II, p. 18; Deposition of Douglas Thibeault, p. 45.) It is undisputed that in response thereto, the boys left the defendant's property.[4] Thus not only did the defendant not create a situation likely to be harmful to the decadent, but the defendant took affirmative steps to eliminate such a situation. As such, the court finds that the evidence submitted would require a directed verdict because no reasonable fact finder could conclude that the defendant created the situation which caused the death of the decedent.
Finally, the court finds that absent an overt act, or an omission to act where there is a legal duty to do so, the defendant, a nonparent without a family-like relationship with the decedent, has no liability under § 53-21. "Most courts deciding whether, under a particular set of facts, liability for an omission to act may be imposed under a statute that does not itself impose a duty to act, have looked to whether a duty to act exists in another statute, in the common law or in a contract. . . . [T]hese courts have examined the nature of the relationship of the defendant to the victim and whether the defendant, as part of that relationship, had assumed a responsibility for the victim." (Citations omitted.) State v. Miranda,245 Conn. 209, 223, 715 A.2d 680 (1998), on remand, 56 Conn. App. 298, 742 A.2d 1276, cert. granted, 252 Conn. 935,747 A.2d 2 (2000). "Indeed, it is well established that this court will look to other relevant statutes governing the same or similar subject matter because the legislature is presumed to have created a consistent body of law." Id., 229. In Miranda, the Supreme Court held that a nonparent who establishes a family-like relationship with a child that has been the victim of previous abuses has a legal duty to protect that child and prevent further harm and that failure to do so creates a breach of that duty pursuant to General Statutes § 53a-59 (a)(3). Id., 230.
The Supreme Court in Miranda looked to § 53-21 to aid in its determination of the scope of the duty prescribed in § 53a-59 (a)(3) in an effort to further a `harmonious and consistent body of law.' Id., 230. This court similarly looks to § 53a-59 (a)(3) to determine if this defendant has a legal duty pursuant to § 53-21, for to find conflicting duties under these two similar statutes would create a constitutional void-for-vagueness problem.[5] Accordingly, this court holds that § 53-21 does not impose a duty on a nonparent who has not CT Page 6032 created a family-like relationship with the victim.
This court's interpretation of § 53-21 is a matter of statutory construction. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) General Motors Corp. v. Dohmann, 247 Conn. 274, 286,722 A.2d 1205 (1998); Ferrigno v. Cromwell Development Associates,244 Conn. 189, 195, 708 A.2d 1371 (1998). "As with any issue of statutory interpretation, our initial guide is the language of the operative statutory provisions." (Internal quotation marks omitted.) Fimiani v.Star Gallo Distributors, Inc., 248 Conn. 635, 641-42, 729 A.2d 212
(1999). However, if the language of the statute, the legislative history and the purpose of the statute are all ambiguous courts "follow the `golden rule of statutory interpretation' . . . that the legislature is presumed to have intended a reasonable, just and constitutional result."Sanzone v. Board of Police Commissioners, 219 Conn. 179, 187, 592 A.2d 912
(1991).
This court recognizes that "[t]he trend of Anglo-American law has been toward enlarging the scope of criminal liability for failure to act in those situations in which the common law or statutes have imposed an affirmative responsibility for the safety and well-being of others."State v. Miranda, supra, 245 Conn. 215. Neither a reasonable interpretation of § 53-21, nor the relevant case law, however, indicates that the legislature intended to create an affirmative duty to act on behalf of nonparents who do not create a family-like relationship with the injured child. In the present case, it is undisputed that the defendant was the parent of one of the boys making the pipe bomb, but he was neither the parent of nor in an in loco parentis relationship with the decedent. Accordingly, the court grants the defendant's motion for summary judgment with regard to count one, negligence per se, because no reasonable trier of fact could reach the conclusion that this defendant under these facts violated § 53-21.
 B. Common Law Negligence
The plaintiff alleges common law negligence in count two of her substituted amended complaint. The defendant now moves for summary judgment on the ground that the defendant did not owe the decedent a duty. The plaintiff argues in her memorandum in opposition to the CT Page 6033 defendant's motion for summary judgment that the defendant anticipated the harm to the decedent as evidenced by the testimony that he said "you're going to get your hand blown off." (Deposition of Douglas Thibeault, p. 45; see also, Deposition of Scott Dawson II, p. 18.) The plaintiff contends, therefore, that a legal duty exists because the decedent's harm was foreseeable to the defendant. Additionally, the plaintiff argues that the public policy considerations weigh in favor of finding a legal duty for an adult to be protective towards minors within their ambit.
In support of her argument, the plaintiff relies on the test for the finding of a legal duty articulated in Mendillo v. Board of Education,246 Conn. 456, 717 A.2d 1177 (1998). Mendillo holds that a defendant's tortious liability to a third party for the commission of an overt act requires a duty analysis using both foreseeability and public policy considerations. Id., 483-84. In the present case, the facts present a different question, whether an omission by the defendant, specifically a failure to protect the decedent from himself, constitutes a breach of a legal duty.
"Omissions are as capable of producing consequences as overt acts. Thus, the common law rule that there is no general duty to protect limits criminal liability where it would otherwise exist. The special relationship exception to the `no duty to act' rule represents a choice to retain liability for some omissions, which are considered morally unacceptable." State v. Miranda, supra, 245 Conn. 217. "Generally one has no legal duty to aid another person in peril, even when that aid can be rendered without danger or inconvenience to himself. . . . A moral duty to take affirmative action is not enough to impose a legal duty to do so." LaFave A. Scott, Basic Premises of Criminal Law, Omission to Act § 3.3(a), p. 284. However, our courts have recognized certain situations which do give rise to a duty to act. Specifically, in determining whether a nonparent defendant has an affirmative legal duty to aid a child in peril, and thus whether that failure to act constitutes a breach of that duty, our Supreme Court has stated the following: "Duty is a legal conclusion about relationships between individuals, made after the fact. . . . The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although one generally has no legal duty to aid another in peril, even when the aid can be provided without danger or inconvenience to the provider, there are four widely recognized situations in which the failure to act may constitute breach of a legal duty: (1) where one stands in a certain relationship to another; (2) where a statute imposes a duty to help another; (3) where one has assumed a contractual duty; and (4) where one voluntarily has assumed the care of another." (Citations omitted.) State v. Miranda, supra, 245 Conn. 221. CT Page 6034
In the present case, the plaintiff does not allege a special relationship, a contractual duty or a voluntary assumption of a duty. Therefore, under the present facts the only situation that would give rise to a legal duty between the defendant and the decedent is if §53-21 imposes a duty to help another. As this court found above, §53-21 does not impose a duty upon a nonparent, without a family-like relationship with the child, to come to the aid of that child in a situation of peril. "In every case in which a defendant's negligent conduct may be remotely related to a plaintiff's harm, the courts must draw a line, beyond which the law will not impose legal liability." Lodgev. Arett Sales Corp., 246 Conn. 563, 578, 717 A.2d 215 (1998). Here the line is clear, absent a special relationship, a defendant cannot be held liable for negligence, pursuant to § 53-21, as the result of an omission because there is no legal duty to act. Accordingly, the defendant's motion for summary judgment with respect to count two is granted.[6]
 IV. CONCLUSION
For the foregoing reasons, the defendant's motion for summary judgment as to counts one and two of the plaintiff's substituted amended complaint, is hereby granted. It is so ordered.
BY THE COURT,
PATRICIA A. SWORDS, JUDGE OF THE SUPERIOR COURT