STATE OF CONNECTICUT *v.* TRACEY TURMON
(12232)

O'CONNELL, LANDAU and SCHALLER, Js.

Argued January 19—decision released April 26, 1994

*Jeffrey D. Hutcoe,* for the appellant (defendant).

*Pamela S. Meotti,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Kathleen McNamara,* deputy assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of failure to appear in the first degree[1] in violation of General Statutes § 53a-172 (a).[2] He claims that the trial court improperly (1) held that the evidence was suffi-

---

[1] The defendant was also convicted of possession of narcotics in violation of General Statutes § 21a-279 (a) but does not challenge that part of the judgment.

[2] General Statutes § 53a-172 (a) provides: "A person is guilty of failure to appear in the first degree when, while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear."

cient to sustain his conviction for failure to appear in the first degree, and (2) instructed the jury as to wilful intent pursuant to General Statutes § 53a-172.[3] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. As a result of an incident on September 28, 1990, the defendant was arrested and charged with the crimes of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and possession of narcotics in violation of General Statutes § 21a-279 (a). Upon his postarrest release, the defendant signed an appearance bond indicating his obligation to appear and knowledge that failure to appear would result in forfeiture of the bond and other penalties. The defendant pleaded not guilty to the charges and elected to be tried by a jury.

On February 7, 1992, the defendant failed to appear in court as scheduled. The defendant visited the Mount Sinai Hospital emergency room that morning and was diagnosed as having bronchitis and sinusitis. The hospital records indicate that he was there for forty-three minutes. He made no attempt to contact the court, either prior to his scheduled hearing or at any other time, to notify it that he would be unable to appear. The bond was forfeited and a rearrest warrant was ordered on February 7, 1992. On March 11, 1992, the defendant was arrested and arraigned for failure to appear on the underlying drug possession charges. Some time thereafter, the court ordered a pretrial hearing scheduled on August 17, 1992.

On August 17, 1992, the defendant again failed to appear. The defendant was at the courthouse on August 17, and requested that a clerk pull his file. The defendant then waited in the courtroom for a confer-

---

[3] The defendant makes two arguments with respect to the jury instruction.

ence with the prosecutor. At one point, the prosecutor approached him in the courtroom and told him that his wait would be longer.

A bail bondsman, Carl Schwartz, saw the defendant outside the courtroom on August 17, and told him that he was due in court and that the judge and the prosecutor were waiting for him. The defendant mumbled something and left the courthouse. The defendant returned to the courthouse later that day. After the clerk informed him that the court had ordered a bond forfeiture and a rearrest, the defendant filled out the forms for a motion to vacate.[4] He then mentioned for the first time that he was not feeling well.

The defendant was charged subsequently with two counts of failure to appear in the first degree in violation of § 53a-172. On December 1, 1992, the jury found the defendant not guilty of possession of narcotics with intent to sell by a person who is not drug-dependent, and returned a guilty verdict on the remaining charges.

The defendant first claims that there was insufficient evidence to support the conviction for failure to appear in the first degree in that the state did not offer sufficient proof as to his wilfulness.[5] "The standard of review of an insufficiency claim is twofold. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Milardo,* 224 Conn. 397,

---

[4] The motion to vacate was later heard and denied on September 4, 1992.

[5] The defendant did not address his sufficiency challenge to any other elements of the crime of failure to appear.

402–403, 618 A.2d 1347 (1993); *State* v. *Jarrett,* 218 Conn. 766, 770–71, 591 A.2d 1225 (1991); *State* v. *Weinberg,* 215 Conn. 231, 253, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990)." (Internal quotation marks omitted.) *State* v. *Harris,* 227 Conn. 751, 757, 631 A.2d 309 (1993).

On the basis of the evidence and the inferences reasonably drawn therefrom, the jury could have concluded beyond a reasonable doubt that the defendant failed to appear pursuant to § 53a-172 (a). " '[I]n order to prove the "wilful" element of General Statutes § 53a-172, the state must prove beyond a reasonable doubt either that the defendant received and deliberately ignored a notice to appear or that he intentionally embarked on a course of conduct designed to prevent him from receiving such notice.' *State* v. *Candito,* 4 Conn. App. 154, 157, 493 A.2d 250 (1985)." *State* v. *Cerilli,* 222 Conn. 556, 583–84, 610 A.2d 1130 (1992).

There was no dispute that the defendant had received notice of his obligation to appear in court on February 7, and August 17, 1992. The question then becomes whether there was sufficient evidence presented so that a jury could have reasonably concluded that the defendant deliberately ignored the notice to appear in both instances.

The defendant claims that, on February 7, his sole intent was to seek medical assistance, not to violate the law. The Mount Sinai Hospital emergency room records indicate that the defendant did, in fact, seek medical care there. His visit, however, lasted only forty-three minutes. Upon his release, the defendant went to a pharmacy to fill a prescription. The defendant did not attempt to contact the court, the prosecutor, or his attorney during this time period. He returned his attorney's telephone call when he arrived home. The jury reasonably could infer from the facts that the

defendant was well enough to travel, and to have contacted the court, the prosecutor or his attorney by telephone to explain his need for medical care. It was reasonable for the jury to conclude that his failure to do so was a deliberate act to ignore the notice to appear. The defendant admitted knowing that he had a scheduled appearance in court at the precise time he went to the hospital. He admitted having sufficient knowledge of court procedure to know that a continuance would have postponed his case. The jury reasonably could conclude that, by failing to take the necessary steps, the defendant acted deliberately in ignoring his obligation to appear in court as scheduled.

On August 17, 1992, the defendant was again scheduled to appear in court, but failed to do so. He claims that he experienced a diarrhetic accident that prevented him from appearing; that he was at the courthouse that day but left to change his clothing. The jury reasonably could have found that the defendant had the opportunity and knowledge either to file an application for a continuance, which would have avoided a failure to appear charge, or to appear and explain his circumstances. Prior to his scheduled court appearance, he spoke to the court clerk, he spoke to the prosecutor, and, at the moment he was due in court, he spoke to the bail bondsman in the corridor. He did not mention to the clerk or to the prosecutor that he was feeling ill, nor did he adequately communicate to the bail bondsman that he was unable to appear as scheduled. It was only after he returned to the courthouse to file a motion to vacate the rearrest that he mentioned to the clerk that he had been ill. Given these facts, the jury reasonably could have concluded that the defendant deliberately failed to appear.

The defendant next claims that the jury instructions were inaccurate as to the element of intent. He first argues that the court defined wilfully without using the

word "purposefully," thereby diluting the state's burden of proof. Second, he contends that the charge shifted the burden of proving his innocence to him because it permitted the jury to infer wilfulness from a finding that the defendant knew he was scheduled to appear and then failed to appear. Not having preserved these claims at trial, the defendant seeks review under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), and *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).[6] "Pursuant to *State* v. *Golding,* supra, 239–40, a defendant may prevail on an unpreserved claim of constitutional error only by meeting all of the following conditions: '(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' *State* v. *Marra,* 222 Conn. 506, 527, 610 A.2d 1113 (1992). In harmony with the objective of *Golding,* the defendant's claim may be disposed of 'by focusing on whichever condition is most relevant in the particular circumstances.' *State* v. *Golding,* supra, 240; *State* v. *Pinnock,* [220 Conn. 765, 778, 601 A.2d 521 (1992)]." *State* v. *Cooper,* 227 Conn. 417, 440, 630 A.2d 1043 (1993). In this case, the defendant's claims do not satisfy the third criterion of *Golding* because the alleged constitutional violations do not exist.

The defendant attacks the charge for its failure to include the word "purposefully" in defining the element of intent as required under General Statutes § 53a-172. "In reviewing a constitutionally based challenge to the

---

[6] Although the record indicates that the defendant objected to the charge on the ground that the word "purposefully" was not included in the definition of intent, he failed to request an exception to the trial court's ruling.

court's instructions to the jury, we must examine the charge as a whole to determine whether it is reasonably possible that the jury was misled by the challenged instruction. *State* v. *Snook,* 210 Conn. 244, 275–76, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989); *State* v. *Bailey,* 209 Conn. 322, 338, 551 A.2d 1206 (1988)." *State* v. *Ober,* 24 Conn. App. 347, 358, 588 A.2d 1080, cert. denied, 219 Conn. 909, 593 A.2d 134, cert. denied, 502 U.S. 915, 112 S. Ct. 319, 116 L. Ed. 2d 26 (1991). "The charge is not to be judged in artificial isolation from the overall charge. *State* v. *Kelly,* 23 Conn. App. 160, 164, 580 A.2d 520 (1990), cert. denied, 216 Conn. 831, 583 A.2d 130, cert. denied, 449 U.S. 981, 111 S. Ct. 1635, 113 L. Ed. 2d 731 (1991)." *State* v. *Falcon,* 26 Conn. App. 259, 269, 600 A.2d 1364 (1991), cert. denied, 221 Conn. 911, 602 A.2d 10 (1992). An error in the charge requires reversal only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict. *State* v. *Bailey,* supra, 209 Conn. 338.

"While the instructions need not be exhaustive, perfect or technically accurate, they must be correct in law, adapted to the issues and sufficient for the guidance of the jury." *State* v. *Channer,* 28 Conn. App. 161, 172, 612 A.2d 95, cert. denied, 223 Conn. 921, 614 A.2d 826 (1992). Our review of the charge indicates that the jury was adequately instructed on the element of intent and there is no reasonable possibility that the jury was misled by the charge. The trial court charged that "an act is done willfully if done knowingly, intentionally or deliberately." Our approval in *State* v. *Candito,* 4 Conn. App. 154, 157, 493 A.2d 250 (1985), of an instruction for failure to appear in the first degree that included the word "purposefully" in its definition of intent, does not make this charge incorrect. It is not critical that a jury instruction include the exact language of previ-

ously approved definitions. What is crucial is that the charge include words that adequately communicate the meaning of "wilful" as required under § 53a-172. *State v. Channer*, supra, 172. The proper definition of wilfulness under General Statutes § 53a-172 was set forth in *State v. Candito*, supra, 157, requiring that "the state prove beyond a reasonable doubt either that the defendant received and deliberately ignored a notice to appear or that he intentionally embarked on a course of conduct designed to prevent him from receiving such notice." See also *State v. Cerilli*, supra, 222 Conn. 583–84. The trial court in the present case used this exact language in its jury charge, and, therefore, delivered an accurate instruction as to intent. We conclude that there was no reasonable possibility that the jury was misled in returning the verdict. Thus, as to the alleged omission in the charge, we conclude that the defendant has failed to demonstrate that the court's charge constituted a clear constitutional violation.

We next address the defendant's unpreserved claim that the charge permitted the jury to infer wilfulness from a finding that the defendant knew that he was scheduled to appear and then failed to appear, and shifted the burden of proof on the element of intent to him.[7] He cites *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), for the proposition that the instruction violated his rights to due process because the state was not required to prove beyond a reasonable doubt each and every element of a charged offense.

"In *Sandstrom* v. *Montana,* [supra, 442 U.S. 517–24], the United States Supreme Court held that a jury

---

[7] The defendant contends that the following sentence of the trial court's charge was constitutionally violative: "If you find beyond a reasonable doubt that the defendant received notice of the date on which he was to appear before the court and that he failed to appear on that date, then you may infer that his failure to appear was wilful."

instruction that the law presumes that a person intends the ordinary consequences of his voluntary acts violated the defendant's due process rights because a reasonable jury could have interpreted the instruction as a conclusive or burden-shifting presumption and thus relieved the state of its burden of proving every element of the crime. See *Francis* v. *Franklin,* 471 U.S. 307, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985); *United States* v. *United States Gypsum Co.,* 438 U.S. 422, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978); *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975) . . . . We have, however, recognized that the rule of *Sandstrom* must not be oversimplified. *State* v. *Mason,* 186 Conn. 574, 582–83, 442 A.2d 1335 (1982); *State* v. *Pina,* 186 Conn. 261, 263, 440 A.2d 967 (1982). *Sandstrom* does not invalidate, for example, the use of an entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and that places no burden of any kind on the defendant. *Ulster County Court* v. *Allen,* 442 U.S. 140, 157, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979); see *State* v. *Fernandez,* 198 Conn. 1, 20, 501 A.2d 1195 (1985); *State* v. *Arroyo,* 180 Conn. 171, 175, 429 A.2d 457 (1980). A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion. *State* v. *Amarillo,* 198 Conn. 285, 300–302, 503 A.2d 146 (1986); see also *State* v. *Shine,* 193 Conn. 632, 644–45, 479 A.2d 218 (1984); *State* v. *Johnson,* 185 Conn. 163, 167–69, 440 A.2d 858, aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983); *State* v. *Vasquez,* 182 Conn. 242, 246–48, 438 A.2d 424 (1980). *State* v. *Palmer,* 206 Conn. 40, 47–48, 536 A.2d 936 (1988)." (Internal quotation marks omitted.) *State* v. *Cooper,* supra, 227 Conn. 443–44.

We must examine the charge as a whole to determine whether it is reasonably possible that the jury was misled by the challenged instruction. *State* v. *Ober,* supra, 24 Conn. App. 358. The challenged charge proposes an entirely permissive inference or presumption that suggests a possible conclusion to be drawn, but does not require the jury to draw that conclusion. The court charged: "You *may* infer that his failure to appear was wilful." (Emphasis added.) In the context of the entire charge, the jury could not have misunderstood the court's instruction to *require* a conclusion be drawn because the court's use of the word "may" contradicts such a possibility. Because the charge did not require the jury to entertain a conclusive presumption, we conclude that the defendant has failed to demonstrate that the court's charge constituted a clear constitutional violation.

The defendant cannot prevail on his unpreserved claims of error because he has not satisfied the third prong of *Golding.* Therefore, we will not review his unpreserved claims.

The judgment is affirmed.

In this opinion the other judges concurred.