STATE OF CONNECTICUT *v.* KEITH LAWS
(13166)

Dupont, C. J., and Lavery and Spear, Js.

Argued October 26—decision released December 19, 1995

*G. Douglas Nash,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Richard L. Palombo, Jr.,* assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of failure to appear in the first degree in violation of General Statutes § 53a-172 (a).[1] The defendant claims that the trial court improperly (1) found that the evidence was sufficient to sustain his conviction of failure to appear in the first degree, (2) charged the jury that it could infer the

---

[1] General Statutes § 53a-172 (a) provides: "A person is guilty of failure to appear in the first degree when, while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear."

essential element of wilfulness from its conclusions relating to the other elements of the offense, and (3) charged the jury on the definition of wilfulness. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On Friday, April 24, 1992, the defendant pleaded not guilty to a charge of robbery in the first degree and elected to be tried by jury. Jury selection commenced immediately thereafter with the state's attorney, the defense counsel, the trial judge and the defendant present. On Tuesday, April 28, 1992, jury selection resumed with those same individuals present. After the jury was selected, the court ordered the defendant to appear at 10 a.m. on Wednesday, April 29, 1992, to begin trial. The defendant did not appear in court on April 29. On April 30, the defendant again failed to appear and the court ordered that he be rearrested.

The defendant presented evidence that on April 29 he had a sore foot and sought treatment at the Southwest Community Health Clinic. The defendant's mother testified that she saw the defendant at about 9 a.m. on April 29 before he left the house and that, at that time, the defendant had an injured foot. She did not see the defendant again until sometime after 5 or 6 p.m. that evening. The defendant also introduced into evidence a sign in sheet from the health clinic, which contained the defendant's name with a 9:55 a.m. sign in time. Cathy Yacavone, chief operations officer at the clinic, testified that she checked the clinic's medical records and found none for the defendant. Yacavone also testified that the sign in sheet served security purposes only and could not be relied on to determine whether a person was treated at the health clinic.

I

The defendant claims that the evidence was insufficient to sustain a conviction for failure to appear

because the state did not prove that the failure to appear was wilful.[2] We disagree. "When an appeal challenges the sufficiency of the evidence to justify a verdict of guilty, we have a two-fold task. We first review the evidence presented at the trial, construing it in the light most favorable to sustaining the verdict. . . . We then determine whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 234 Conn. 324, 331, 662 A.2d 1199 (1995).

"In order to prove the 'wilful' element of General Statutes § 53a-172, the state must prove beyond a reasonable doubt either that the defendant received and deliberately ignored a notice to appear or that he intentionally embarked on a course of conduct designed to prevent him from receiving such notice." *State* v. *Candito*, 4 Conn. App. 154, 157, 493 A.2d 250 (1985). In this case, the defendant's mother testified that on the morning of April 29, 1992, the defendant had an injured foot and was walking with a limp. She stated that the defendant left her house on foot at about 9 a.m. without calling an ambulance or other transportation. She also testified that the defendant returned home at about 5 or 6 p.m. and was at home the following day. The jury reasonably could infer from the evidence presented that the defendant was well enough to travel

---

[2] The defendant asks us to abandon the rule that a defendant who elects to put on evidence after a denial of his motion for judgment of acquittal at the end of the state's evidence is deemed to have waived his right to appellate review as to the sufficiency of the evidence at the end of the state's case. See *State* v. *Battista*, 31 Conn. App. 497, 502, 626 A.2d 769, cert. denied, 227 Conn. 907, 632 A.2d 696 (1993). In this case, we need not discuss the rule because the defendant did not move for judgment of acquittal at the end of the state's case, but rather moved for judgment of acquittal after final argument.

to the courthouse, or to telephone the court, the prosecutor or his attorney to explain his need for medical care. See *State* v. *Turmon*, 34 Conn. App. 191, 195–96, 641 A.2d 138, cert. denied, 229 Conn. 922, 642 A.2d 1216 (1994). On the basis of these facts, we find that the jury reasonably could have concluded that the defendant deliberately ignored the trial court's order to appear.

## II

The defendant next claims that the trial court improperly instructed the jury that it could infer the element of wilfulness if it found that the defendant had notice of the time and date to appear in court and that he failed to appear.[3] In *State* v. *Turmon*, supra, 34 Conn. App. 201, this court found that the language of an identical jury instruction "proposes an entirely permissive inference or presumption that suggests a possible conclusion to be drawn, but does not require the jury to draw that conclusion. . . . In the context of the entire charge, the jury could not have misunderstood the court's instruction to *require* a conclusion be drawn because the court's use of the word 'may' contradicts such a possibility."[4] (Emphasis in original; internal quotation marks omitted.)

The jury is not barred from drawing inferences consistent with guilt when viewing evidence which could yield contrary inferences. "The rule is that the jury's

---

[3] The trial court instructed the jury as follows: "The third element is that the defendant wilfully failed to appear as required. In this connection you are advised that an act is done wilfully if done knowingly, intentionally and deliberately. If you find beyond a reasonable doubt that the defendant received notice of the date on which he was to appear before the superior court and he failed to appear on that date, you may infer that his failure to appear was wilful."

[4] We also note that the trial court instructed the jury concerning the permissible use of inferences as follows: "But if you find those certain facts to have been proved and *if the only reasonable inference* to be drawn from the existence of those facts is that the accused committed the crime charged, then it is your duty to draw that inference and to find him guilty." (Emphasis added.)

function is to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Sivri*, 231 Conn. 115, 132–33, 646 A.2d 169 (1994). We conclude that the trial court's instruction allowed the jury to draw only those inferences supported by the evidence in this case.

## III

The defendant also claims that the trial court improperly instructed the jury on the definition of "wilfulness."[5] The defendant claims that the definition used by the trial court was improper because it did not instruct the jury that the state was required to prove beyond a reasonable doubt that the defendant (1) received and deliberately ignored a notice to appear or (2) intentionally embarked on a course of conduct designed to prevent him from receiving such notice. See *State* v. *Turmon*, supra, 34 Conn. App. 199. At trial, the defendant neither submitted a written request to charge nor took an exception to the charge.

In cases where the defendant neither filed a request to charge nor excepted to the charge, our review of the jury instruction is limited to whether the trial court improperly denied the defendant his constitutional right to have the jury adequately instructed on each element of the offense. *State* v. *Silano*, 204 Conn. 769, 776–77, 529 A.2d 1283 (1987). "When we review jury instructions, we are obligated to view the charge itself in the context of the whole trial. . . . Where, as here, no requests to charge were filed nor exceptions to the charge taken, we do not engage in a microscopic examination of the charge, dissecting it line by line, nor do we consider the challenged portions of the charge in isolation. . . . Rather, we examine the charge as a whole to determine whether the charge adequately guided the jury to a correct verdict. . . . Jury instruc-

---

[5] See footnote 3.

tions need not be exhaustive, perfect or technically accurate. . . . To pass constitutional muster, jury instructions must be correct in law, adapted to the issues in the case and sufficient to guide the jury in arriving at a verdict. . . . The test that we apply to any part of the charge is whether the charge as a whole presents the case to the jury in such a manner that no injustice is perpetrated." (Citations omitted; internal quotation marks omitted.) *State* v. *Patterson*, 35 Conn. App. 405, 417, 646 A.2d 258, cert. denied, 231 Conn. 930, 649 A.2d 254 (1994). Where there is a constitutionally based challenge to the trial court's instructions, "[a]n error in the charge requires reversal only if, in the context of the whole instruction, there is a reasonable possibility that the jury was misled in reaching its verdict." *State* v. *Turmon*, supra, 34 Conn. App. 198.

The trial court's instruction defining a wilful act was sufficient to guide the jury in arriving at its verdict. While the instruction was not exhaustive, we conclude that it was correct in law and there is no reasonable possibility that the jury was misled by the trial court's definition.

The judgment is affirmed.

In this opinion the other judges concurred.