STATE OF CONNECTICUT *v.* AYANNA KHADIJAH
(AC 25518)

Flynn, C. J., and DiPentima and Dupont, Js.

Argued September 20—officially released November 14, 2006

*Mary Anne Royle*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Suzanne M. Vieux*, assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Ayanna Khadijah, appeals from the judgment of conviction, rendered after the jury found her guilty of the crime of failure to appear in the first degree in violation of General Statutes § 53a-172.[1] She principally argues that there was insufficient

---

[1] General Statutes § 53a-172 (a) provides in relevant part: "A person is guilty of failure to appear in the first degree when (1) while charged with the commission of a felony and while out on bail or released under other procedure of law, he wilfully fails to appear when legally called according to the terms of his bail bond or promise to appear . . . ."

evidence from which the jury could conclude beyond a reasonable doubt that one of the elements of the statute, "wilfully fails to appear," was proven. We agree and reverse the judgment of the trial court.

The defendant was charged originally with three counts: possession of narcotics in violation of General Statutes § 21a-279 (a); possession of a controlled substance (less than four ounces of marijuana) in violation of General Statutes § 21a-279 (c); and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). The defendant's appearance bond was set at $25,000 on February 20, 2002. Jury selection for the defendant's trial commenced on August 12, 2003. At the end of the day, the trial court, *Reynolds, J.*, ordered the parties to appear the following morning at 10:45 a.m. to resume jury selection. The next day, the defendant had not arrived for jury selection by 11:25 a.m., and the prosecutor, Suzanne M. Vieux, requested that the defendant be rearrested. The defendant's attorney, Samantha A. Kretzmer, telephoned the defendant and returned to the courtroom to report that she had reached the defendant and that the defendant was on her way. The transcript records the following discussion:

"[Defense Counsel]: There was something that happened, and I didn't have time to go through the details because I said, 'Just get here now.' I will be more than happy to find out what happened and report back to Your Honor. If you could please just give her—

"The Court: I don't think so, counsel. We've got a clerk, a court reporter, marshals, myself, a prosecutor and sixteen jurors sitting there waiting for her.

"[Defense Counsel]: I mean, Your Honor—

"The Court: I don't think I'm inclined to do that."

After further discussion, the court ordered that the defendant's bond be forfeited at 11:28 a.m. The court

then ordered the rearrest of the defendant, set her new bond at $50,000 and subsequently excused the jury panel. Later that day, defense counsel stated to the court, "I just wanted to say that as [the prosecutor] and I exited the courtroom, we saw [the defendant] coming in through the metal detector." Following this, the defense counsel requested that the court reconsider the rearrest order. The court responded, "She did wilfully fail to appear. She wilfully failed to appear, and I don't want to hear any more. I'm not recalling the matter. Do you have any other matters?" The court then moved on to other matters.

Thereafter, on December 17, 2003, the state, in a substitute information, charged the defendant with the original three crimes and added the charge of failure to appear in the first degree in violation of § 53a-172 (a) (1). On January 15, 2004, before the second trial commenced, the court, *Wilson, J.*, granted the defendant's motion to suppress evidence, which the defendant had previously filed. Following that ruling, the state nolled the first three counts of the information, opting to prosecute only the failure to appear count. Trial began on January 20, 2004, and, on January 21, 2004, the jury returned a verdict of guilty on the count of wilful failure to appear in the first degree.[2] After a presentence investigation, the defendant was sentenced to "three years execution suspended, [two] years conditional discharge and a $5000.00 fine to be paid within [thirty] days. The following conditions were imposed: drug evaluation and treatment, psychiatric evaluation and treatment, [full-time] employment and/or school, report to Myrtice Wilson (mentor) on a weekly basis

---

[2] The defendant had filed a motion for a judgment of acquittal at the close of the state's case-in-chief on January 20, 2004. The motion was denied, and the defendant proceeded to present evidence before the jury. After the verdict, the defendant on January 26, 2004, filed another motion for a judgment of acquittal as well as a motion for a new trial. Both were denied.

whereupon Ms. Wilson will provide a weekly progress report."

The defendant claims that (1) there was insufficient evidence from which the jury could find beyond a reasonable doubt that she wilfully failed to appear in court on August 13, 2003, (2) the court improperly admitted evidence of her 1991 conviction of the misdemeanor failure to appear in the second degree, (3) the court improperly denied her request to call the bail bondswoman as a witness and (4) the declaration of a mistrial on August 13, 2003, was improper.

We must first discuss the defendant's claim of insufficiency of the evidence to allow the jury to find "wilfulness" proven beyond a reasonable doubt.[3] We conclude that the defendant is correct, and, therefore, her evidentiary claims and her claim that the prior declaration of a mistrial was improper are moot, and she is entitled to a judgment of acquittal. Before beginning our discussion, certain relevant procedural facts must be stated. At the close of the state's case-in-chief, the defendant filed a motion for a judgment of acquittal, which was denied. The defendant then put evidence before the jury. Because the waiver rule[4] has been deemed constitutional; *State* v. *Perkins*, 271 Conn. 218, 228–45, 856 A.2d 917 (2004); we review the defendant's insufficiency of the evidence claim by examining all of the evidence before the jury. It is the propriety of the

---

[3] The defendant does not dispute that the elements, "while charged with the commission of a felony," and "while out on bail" in § 53a-172 have been satisfied.

[4] Under the waiver rule, if the trial court denies a defendant's motion for a judgment of acquittal by reason of insufficient evidence after the conclusion of the state's case-in-chief, the defendant must either forgo the opportunity of presenting evidence and appeal from the decision immediately or he must waive his ability to appeal from the decision in order to present evidence. *State* v. *Perkins*, 271 Conn. 218, 229, 856 A.2d 917 (2004). If the defendant elects to introduce evidence, the appellate review encompasses all the evidence put before the jury. Id.

jury's verdict of guilty, not the propriety of the court's denial of a motion for a judgment of acquittal after the state's case-in-chief has been concluded, that we review. See id., 240–41. In this case, we therefore consider all of the evidence, regardless of whether it was introduced by the state or the defendant.

"In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Jimenez*, 74 Conn. App. 195, 201, 810 A.2d 848 (2002), cert. denied, 262 Conn. 947, 815 A.2 677 (2003).

The state produced the following evidence during its case-in-chief.[5] The state's first witness, the deputy chief clerk of the court, testified that the court did not receive a telephone call from the defendant that she would be late to court. The state also had a portion of the transcript of August 12 and 13, 2003, read to the jury. The jury first heard Judge Reynolds' instructions to the parties to be in the courthouse on August 13, 2003, at 10:45 a.m. Next, the state read the transcript of the August 13, 2003 proceeding, in which the court ordered the defendant's bond forfeited and subsequently dismissed the jury at 11:28 a.m. The jury was also read the portion of the transcript in which defense counsel informed the court that she and the prosecutor had seen the

---

[5] The state also produced, and the court admitted into evidence as state's exhibit three, a copy of the bail bond, the terms of which the defendant allegedly violated when she did not appear in court promptly at 10:45 a.m. on August 13, 2003. Apparently through no fault of the parties, the exhibit was destroyed by fire subsequent to trial and before this appeal.

defendant arriving at court.[6] The state then rested its case.

After the state rested and the court denied the defendant's motion for a judgment of acquittal, the defendant testified.[7] The defendant stated that she was working two jobs about the time of the August 13, 2003 court date. She delivered newspapers, beginning at 1 a.m., and returned home at 8 a.m. When she returned home, she sat on her couch and told her boyfriend to wake her should she inadvertently fall asleep. At some point, the defendant did, in fact, fall asleep on her couch and did not wake until her attorney telephoned her from the courthouse. The defendant immediately departed for the court and arrived later that morning.

As this court has noted, "[t]he word wilful means doing a forbidden act *purposefully* in violation of the law. It means that the defendant acted *intentionally* in the sense that his conduct was *voluntary* and not inadvertent . . . . Thus, wilful misconduct is *intentional misconduct*, which is *conduct done purposefully* . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Miranda*, 56 Conn. App. 298, 313, 742 A.2d 1276 (2000), rev'd on other grounds, 260 Conn. 93, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002).

The state argues that the facts and factual inferences sufficiently support the jury's finding of wilfulness. It argues that (1) the defendant knew she was scheduled to be in court at 10:45 a.m. and chose to go to work the night before, from which the jury could have inferred that she began work knowing she would be

[6] The state conceded at oral argument that the defendant did, in fact, arrive at the courthouse on August 13, 2003, at approximately 11:30 a.m.

[7] The state made extensive use of the facts provided by the defendant both in its closing argument to the jury and in its argument on appeal and does not dispute them.

exhausted the next morning, (2) she chose not to take sufficient steps to ensure that she would arrive in court on time; specifically, the state notes that she did not set an alarm clock, brew a pot of coffee or ask her attorney to give her a wake-up call and (3) by asking her boyfriend to wake her should she fall asleep, she intentionally abdicated personal responsibility for arriving in court on time.

The state cites three cases to support its argument that from the facts and inferences previously stated, the jury reasonably could have found the element of wilfulness proven beyond a reasonable doubt: *In re Marshall*, 549 A.2d 311 (D.C. 1988); *State* v. *Laws*, 39 Conn. App. 816, 668 A.2d 392 (1995), cert. denied, 236 Conn. 914, 673 A.2d 1143 (1996); and *State* v. *Turmon*, 34 Conn. App. 191, 641 A.2d 138, cert. denied, 229 Conn. 922, 642 A.2d 1216 (1994).

*In re Marshall* is distinguishable. In that case, the defendant, an attorney, was found to be in contempt of court for failure to appear. *In re Marshall*, supra, 549 A.2d 312. The decision of the trial court and the appellate court both rested primarily on the evidence that the defendant had been late for numerous other court appointments. See id., 312, 314. Additionally, in *In re Marshall*, the defendant intentionally had gone to bed the night before his scheduled court date, remained sleeping during the time that he was scheduled to appear in court, called the judge's chambers at 1 p.m. to inform the judge that he had not been in court at his scheduled time because he had overslept and would not be showing up that day, and then intentionally went back to bed. Id., 312. Here, in contrast, there is no evidence that the defendant went to bed before her scheduled court time, intended to fall asleep or returned to sleep after being alerted that she was presently expected in court. Additionally, there is an important distinction between a charge of contempt of court, the

charge involved in *In re Marshall*, and a failure to appear when "legally called according to the terms of his bail bond or promise to appear"; General Statutes § 53a-172 (a); the charge involved in the present case. The underlying purpose of § 53a-172 is the protection of the integrity of the bail bond system. That is not the equivalent of the protection or enforcement of the contempt power of the court, which is to enable a court to preserve its dignity and to protect its proceedings. *State* v. *Garvin*, 242 Conn. 296, 306–307, 699 A.2d 921 (1997). The offense involved in the present case is wholly statutory. The test of whether a statute's elements have been proven beyond a reasonable doubt is not the same test employed to determine whether a person was correctly found to be in contempt of court.

*Laws* is also not applicable to the case at hand. In *Laws*, the defendant did not arrive in court at all on the scheduled date, and there was no contact between the defendant and his attorney either before he was to appear or at any time during that day thereafter. Further, the defendant proceeded to absent himself from the court the following day as well. *State* v. *Laws*, supra, 39 Conn. App. 818–20. The court determined that on these facts the jury could reasonably find wilfulness. Here, it is not in dispute that there was contact between the defendant and her attorney or that the defendant arrived at court later that same morning.

In *Turmon*, this court found that the jury properly returned a verdict of guilty for wilful failure to appear as a result of the defendant's having shown up in court in the morning, fleeing the court just prior to his scheduled time to appear due to illness and then returning later in the day to request that his rearrest be vacated. *State* v. *Turmon*, supra, 34 Conn. App. 196. The court relied heavily on the fact that at no point until he requested that his rearrest be vacated did the defendant tell anyone at the court about his earlier illness. Id. Even if the

underlying emergency was not intentional, the defendant had been in the courthouse and had fled voluntarily just before he was scheduled to appear. Id., 195. Further, there was no communication between the *Turmon* defendant and either his attorney or the court until much later, and at no time did Turmon or his counsel ask the court to wait because his arrival was imminent. In contrast, here the defendant did not voluntarily flee the courthouse just before her appointed time, there was contact between the defendant and her attorney just prior to the court calling her to appear, and the defendant gave assurances that she would shortly arrive, which she did.

Other Connecticut "wilful failure to appear" cases, such as *State* v. *Candito*, 4 Conn. App. 154, 493 A.2d 250 (1985), and *State* v. *Smith*, 85 Conn. App. 96, 856 A.2d 466 (2004), aff'd, 280 Conn. 285, 907 A.2d 73 (2006), are also not controlling because their facts support the element of wilfulness. In *State* v. *Candito*, supra, 156, the defendant absented himself from the Connecticut court and was found two weeks later in another state. In *State* v. *Smith*, supra, 102, the defendant was eventually located in North Carolina. In both of these cases, the defendant was rightfully convicted of failure to appear. The defendant in this case, in contrast, was "found" in the same courthouse within a short period of time of the scheduled hour and place for her appearance.

Working late the night before a court appearance, pursuant to a regularly kept work schedule, failing to set an alarm clock or asking a friend to awaken her from a potentially inadvertent doze does not amount to purposefully and intentionally absenting oneself from the courthouse. At best, the state's first two offered pieces of evidence would support a finding of negligent, not *purposeful,* absence from court. As for the state's third piece of evidence, namely, that the defendant

asked her boyfriend to wake her should she fall asleep, it supports the defendant's claim of nonwilfullness. It shows that the defendant did take some measures to ensure that she would arrive to court on time. We conclude that the evidence does not establish beyond a reasonable doubt that the defendant wilfully failed to appear in court at her scheduled time on August 13, 2003, in violation of § 53a-172 (a).

The judgment of conviction of failure to appear in the first degree is reversed and the case is remanded with direction to render judgment of not guilty.

In this opinion the other judges concurred.