STATE OF CONNECTICUT *v.* CHARLES W. OUTLAW, JR.
(AC 28390)

Flynn, C. J., and Gruendel and Lavine, Js.

Argued January 10—officially released July 1, 2008

*Christopher Y. Duby*, special public defender, for the appellant (defendant).

*Kathryn Ward Bare*, deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Louis J. Luba, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Charles W. Outlaw, Jr., appeals from the judgment of conviction, rendered after a jury trial, of failure to appear in the first degree in violation of General Statutes § 53a-172. On appeal, the defendant claims that the court improperly (1) denied his motion for a judgment of acquittal, as there was insufficient evidence from which the jury reasonably could have found that he wilfully failed to appear for sentencing, and (2) permitted the state to introduce evidence that he pleaded guilty to two felonies, including the names of the felonies. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In April, 2001, the defendant was charged with

attempt to commit assault in the first degree and assault of a police officer (2001 charges). On February 3, 2003, the defendant pleaded guilty to the 2001 charges under the *Alford* doctrine.[1] In exchange for his plea, the defendant agreed to be sentenced to ten years incarceration, execution suspended after four years, and three years of probation. During the plea canvass, the court, *Handy, J.*, advised the defendant that sentencing would take place on March 28, 2003, and that if he did not appear at sentencing, he faced potential penalties.[2] Judge Handy also informed the defendant that a member of the office of adult probation would interview him prior to sentencing to prepare a presentence investigation report and that if he failed to cooperate with the office of adult probation, the court would sentence him nonetheless. The defendant was represented by counsel at the plea proceeding.

On March 28, 2003, at 10:07 a.m., when Judge Handy called the defendant's case for sentencing, she heard no response from either the defendant or his counsel.[3] Judge Handy, therefore, ordered the defendant's $250,000 surety bond forfeited and that he be rearrested. The defendant was arrested pursuant to the court's order on June 10, 2003, and charged with failure to appear in the first degree. He was sentenced on the 2001 charges in accordance with the February 3, 2003 plea agreement on September 10, 2003.

The defendant was tried to the jury on the charge of failure to appear in May, 2004. During its case-in-chief,

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). Pursuant to the *Alford* doctrine, a defendant is not required to admit guilt but consents to being punished in order to avoid the risks of a trial.

[2] Judge Handy stated to the defendant: "I just want you to be aware of the fact that you better be here on the day I sentence you. Do we understand each other?" The defendant responded, "Yes."

[3] Judge Handy stated that the defendant "did not show up for his presentence investigation."

the state placed in evidence the information and substitute information on the 2001 charges, the information on the charge of failure to appear, and the March 28, 2003 arrest warrant. The state also placed in evidence the appearance bond that the defendant had signed with regard to the 2001 charges.

The defendant testified that he was in the courthouse, outside Judge Handy's courtroom at 9:30 a.m. on March 28, 2003, waiting for his attorney, William Palmieri. According to the defendant, he waited for two hours before telephoning Palmieri, who was in another courthouse. The defendant further testified that Palmieri told him that he, Palmieri, would call the court, obtain a continuance of the sentencing and inform the defendant of the new sentencing date. The defendant also testified that Palmieri told him that he could leave the courthouse. The defendant testified that he left the courthouse, expecting that Palmieri would call and tell him when next to appear in court.[4] The defendant explained that he did not cooperate with the pretrial sentencing investigation because he intended to file a motion to withdraw his guilty plea.[5] On cross-examination, the

[4] By order of the Superior Court, *Silbert, J.*, Palmieri was suspended from the practice of law for one year effective April 1, 2003, three days after the defendant was to be sentenced. The parties, however, stipulated that Palmieri's suspension was not related to his representation of the defendant in this case. Nonetheless, in his appellate brief, the defendant makes much of Palmieri's suspension. The defendant, however, failed to call Palmieri to testify at trial.

[5] On cross-examination, the jury heard the following:

"[The Prosecutor]: So, again . . . as reflected . . . in the transcript, and you were there for the court hearing, right, on February 3, 2003?

"[The Defendant]: Yes.

"[The Prosecutor]: It says, page ten . . . . 'The Court. And you understand [that] once I impose and accept this . . . sir, you're not going to have an opportunity to change your mind; do you understand that?' And you answered, 'yes,' correct?

"[The Defendant]: (unintelligible answer)

"[The Prosecutor]: And then it says [that] the court states [that] 'the exception is the rule, that is, if . . . on the date that I sentence you, for any reason I cannot go along with this agreement, I will allow you to

defendant, having been convicted of felonies on three prior occasions, acknowledged that he knew that he was supposed to be in court on March 28, 2003. The defendant testified that prior to leaving the courthouse on March 28, 2003, he did not speak to any court personnel. At the close of evidence, the defendant moved for a judgment of acquittal. The court, *Espinosa, J.*, denied the motion. The jury found the defendant guilty of failure to appear in the first degree, and he was sentenced to two years in prison consecutive to the sentence he was then serving.

I

The defendant's first claim is that the court improperly denied his motion for a judgment of acquittal, claiming that there was insufficient evidence by which the jury could have found that he wilfully failed to appear for sentencing on March 28, 2003. We disagree.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded

withdraw your plea and continue to go to trial. Do you understand that?' Your answer was 'yes.' That's in the transcript. You were there for that, right?

"[The Defendant]: Yes.

"[The Prosecutor]: Okay. So, but . . . it's your claim that you went to court on March 28, 2008, with the intent of vacating your pleas, correct?

"[The Defendant]: Yes.

"[The Prosecutor]: Because [the] bottom line is [that] you just weren't happy—you weren't happy with the disposition that . . . had been arranged?

"[The Defendant]: No.

"[The Prosecutor]: You just didn't want to . . . follow through with that agreement, correct?

"[The Defendant]: That agreement, no."

that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proved and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Rice*, 105 Conn. App. 103, 107, 936 A.2d 694 (2007), cert. denied, 285 Conn. 921, 943 A.2d 1101.

General Statutes § 53a-172 (a) provides in relevant part: "A person is guilty of failure to appear in the first degree when (1) while charged with the commission of a felony and while out on bail or released under other procedure of law, he *wilfully* fails to appear when legally called according to the terms of his bail bond or promise to appear . . . ." (Emphasis added.) "[T]he word wilful means doing a forbidden act *purposefully* in violation of the law. It means that the defendant acted *intentionally* in the sense that his conduct was *voluntary* and not inadvertent . . . . Thus, wilful misconduct is *intentional misconduct*, which is *conduct done purposefully* . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Khadijah*, 98 Conn. App. 409, 415, 909 A.2d 65 (2006), appeal dismissed, 284 Conn. 429, 934 A.2d 241 (2007).

"In order to prove the 'wilful' element of General Statutes § 53a-172, the state must prove beyond a reasonable doubt either that the defendant received and

deliberately ignored a notice to appear or that he intentionally embarked on a course of conduct designed to prevent him from receiving such notice." (Internal quotation marks omitted.) *State* v. *Laws*, 39 Conn. App. 816, 819, 668 A.2d 392 (1995), cert. denied, 236 Conn. 914, 673 A.2d 1143 (1996).

"Because direct evidence of the accused's state of mind is rarely available . . . intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Rice*, supra, 105 Conn. App. 108. "[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) Id., 107.

During its case-in-chief, the state placed in evidence transcripts of the defendant's plea proceeding before Judge Handy, during which she admonished the defendant to appear for sentencing or risk penalty. The appearance bond on the 2001 charges, which the state placed in evidence, was signed by the defendant and stated in relevant part: "IF I FAIL TO APPEAR . . . I will be committing the crime of FAILURE TO APPEAR and be subject to the following penalties . . . ONE YEAR IN PRISON OR $2,000 FINE OR BOTH, if I am charged with a Misdemeanor(s). FIVE YEARS IN PRISON or $5,000 FINE or BOTH, if I am charged with a Felony . . . ." The defendant was fully familiar with the criminal justice system, having been convicted of felonies on several occasions prior to the 2001 charges, and he admitted that he knew he was required to appear for sentencing on March 28, 2003.

In arguing to Judge Espinosa that the motion for a judgment of acquittal should be granted, defense counsel stated that the defendant was in the courthouse on the date in question but left because his counsel, who was not present, told him that he would obtain a continuance and notify him of the rescheduled date for sentencing. The state argued in response that the defendant's testimony as to why he did not appear in Judge Handy's courtroom or speak with court personnel was a matter of credibility for the jury to decide. In denying the defendant's motion for a judgment of acquittal, Judge Espinosa cited evidence that Judge Handy specifically told the defendant to appear on March 28, 2003, and that the defendant had experience with the criminal justice system and was aware of the consequences of failing to appear.

On the basis of our review of the record, we conclude that there was sufficient evidence by which the jury could have found that the defendant wilfully failed to appear for sentencing. The state presented evidence that the defendant received notice to appear, and the defendant testified that his counsel told him that he could leave.[6] It is not within the purview of appellate courts to analyze the process by which a jury reaches its verdict. Under the standard of review applicable to the facts of this case, the jury reasonably could have found, on the basis of the evidence presented and the reasonable inferences to be drawn therefrom, that the defendant's actions were intentional and that he therefore wilfully failed to appear for sentencing on March 28, 2003. Moreover, the jury was entitled to disbelieve the defendant's uncorroborated testimony that he was in the courthouse on that date. This court "must defer to

[6] Because we decide this appeal on the basis of the credibility determinations the jury was entitled to make, this case does not require us to consider whether reliance on the advice of counsel is a defense to a charge of failure to appear.

the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Pauling*, 102 Conn. App. 556, 564, 925 A.2d 1200, cert. denied, 284 Conn. 924, 933 A.2d 727 (2007). For these reasons, we conclude that the court did not improperly deny the defendant's motion for a judgment of acquittal.

II

The defendant's second claim is that the court improperly permitted the state to introduce the defendant's guilty plea to the charges of assault of a police officer and attempt to commit assault in the first degree, as the evidence was irrelevant and its prejudicial effect greatly outweighed its probative value.[7] We reject this claim.

The following facts are relevant to our review of the defendant's claim that Judge Espinosa improperly permitted into evidence the names of the felonies to which the defendant pleaded guilty. Prior to the start of evidence on May 7, 2004, the prosecutor informed the court that he intended to offer into evidence two transcripts of the court proceedings on the 2001 charges and asked whether he could read the transcripts into the record. Defense counsel inquired whether the state intended to put the defendant's entire February 3, 2003 guilty plea into evidence. The prosecutor responded

[7] The defendant's statement of this claim is unclear. The state contends that at trial, the defendant did not object to the fact that he pleaded guilty to two felonies from being placed in evidence and, therefore, that portion of his claim is not reviewable. Our review of the transcript reveals that the defendant objected only to the names of the 2001 charges to which he had pleaded guilty from being admitted in evidence. In his brief to this court, the defendant's argument is limited to the names of the felonies to which he pleaded guilty. Our review is confined to the court's permitting to be put into evidence the names of the felonies to which the defendant pleaded guilty, not the fact that he pleaded guilty.

that he did. Defense counsel argued that the entire plea was not probative of whether the defendant had violated § 53a-172 (a). The defendant was willing to stipulate that he was accused of a felony as required by the statute. Defense counsel further argued that the facts underlying the 2001 charges were not relevant. The court reviewed the transcript of the defendant's plea and ordered that the facts underlying the 2001 charges be redacted. The court also ordered the state to redact the penalties for the 2001 charges discussed in the defendant's plea canvass. The court refused to order the state to redact the names of the felonies with which the defendant was charged, stating, "That's part of the—the crime that he was on bail on was a felony."

The state's first witness was Gaynell Barrow, the acting deputy clerk in the geographical area number fifteen courthouse. Through Barrow, the prosecutor offered into evidence, as a business record, the "court information sheet on which information is recorded by the clerk of the procedures that happened in court." Defense counsel objected to certain information contained on the information sheet, arguing that it was prejudicial to the defendant. The prosecutor argued that all of the information on the sheet was relevant because it demonstrated that the defendant was familiar with court procedures. The defendant had been in court seventeen times on the 2001 charges, and he had failed to appear in the case once before. The information sheet documented that the first rearrest order had been vacated subsequently. In the prosecutor's words, the information sheet demonstrated that the defendant was familiar with the procedures to be followed if he failed to appear in court. The court permitted the state to put the entire information sheet into evidence. It was relevant to the defendant's familiarity with the court proceedings, the length of time the case had been pending, and the defendant's wilfulness and knowledge of

his obligation to appear. The court further found that its probative value outweighed any prejudice to the defendant.

The prosecutor indicated that he intended to place in evidence the defendant's appearance bond, the substitute information that reflected the defendant's *Alford* plea and the transcript of the March 28, 2003 proceeding. Defense counsel argued that the documents were prejudicial to the defendant and cumulative. The prosecutor argued that the documents were admissible in full to demonstrate that a substitute information was filed, that the charges against the defendant were still felonies and that the defendant was present in court on February 3, 2003, to enter a plea but was not present on March 28, 2003. The court overruled the objection, concluding that the evidence was relevant and that "the prejudice does not outweigh the probative value."

The prosecutor also indicated that he intended to enter into evidence the information sheet for the defendant's arraignment on June 11, 2003, for the purpose of showing that subsequent to Judge Handy's issuing a rearrest warrant, the defendant did not move to vacate the rearrest and that the 2001 charges were bifurcated from the charge of failure to appear. Defense counsel again argued that those documents were cumulative and being put into evidence to prejudice the defendant. The court overruled the objection, stating that the documents were relevant to the issue of wilfulness, as the defendant had an opportunity to appear in court and correct any misunderstanding about his failure to appear. The court ordered, however, that the sentence the defendant received was to be redacted.

The state also intended to put in evidence the defendant's rearrest warrant issued by Judge Handy. Defense counsel objected to the document because all of the crimes charged in connection with the 2001 charges

appeared on the warrant and in duplicate. Judge Espinosa ordered the state to redact all of the 2001 charges referred to in the warrant, including the statute designations and offense classifications.

The abuse of discretion standard applies to our review of the defendant's claim. "[T]he trial court has broad discretion in ruling on the admissibility [and relevancy] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . .

"Evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . The proffering party bears the burden of establishing the relevance of the offered [evidence]." (Citation omitted; internal quotation marks omitted.) *State* v. *Lemay*, 105 Conn. App. 486, 491–92, 938 A.2d 611, cert. denied, 286 Conn. 915, 945 A.2d 978 (2008).

"[E]vidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *Bennett-Gibson*, 84 Conn. App. 48, 66, 851 A.2d 1214, cert. denied, 271 Conn. 916, 859 A.2d 570 (2004).

On the basis of our review of the record, including the transcript and the exhibits, we conclude that the court did not abuse its discretion in admitting the content of the documents at issue. The defendant argues that the names of the felonies are irrelevant and that all that was necessary for the state to prove the failure to appear charge was the fact that he had been charged with a felony or felonies. The defendant claims that naming the felonies was particularly harmful because one of the felonies was assault of a police officer. He supports his position with the fact that the court instructed the jury that the charges to which the defendant pleaded guilty were felonies, without naming them. He also claims prejudice because the evidence was cumulative.

In response, the state argues that the names of the 2001 charges were relevant, as the names of the crimes establish that they are felonies and that the defendant had a motive for not appearing, i.e., to avoid incarceration and other serious penalties, and for that reason his failure to appear was wilful. We agree with the state.

The state had the burden to demonstrate the relevance of the proffered evidence, namely, that the defendant's failure to appear was wilful. Ordinarily, "evidence concerning other crimes of which the defendant has been charged or convicted, due to its prejudicial nature, is inadmissible. . . . Such evidence is admissible, however, if it is probative of motive, intent, identity, a system of criminal activity, or the credibility of the defendant's testimony." (Citation omitted.) *State* v. *Candito*, 4 Conn. App. 154, 161, 493 A.2d 250 (1985) (claim that court improperly admitted specific crimes of which defendant found guilty). In *Candito*, this court concluded: "The state had to prove beyond a reasonable doubt that the defendant while charged with the commission of a felony, wilfully failed to appear. The five felony charges to which the defendant pleaded guilty

were serious crimes involving guns, drugs, and burglary for which he faced sentencing and probable incarceration when he failed to appear. Evidence of these underlying offenses was both relevant and material to two elements of the crime of failure to appear and was properly admitted by the trial court." (Internal quotation marks omitted.) Id.

As we noted in part I, generally, there is no direct evidence of a defendant's state of mind, and intent must be proved by circumstantial evidence. See, e.g., *State* v. *Salaman*, 97 Conn. App. 670, 677, 905 A.2d 739, cert. denied, 280 Conn. 942, 912 A.2d 478 (2006). The documents at issue, as the court noted, contained circumstantial evidence of the defendant's familiarity with court proceedings that was relevant to the element of wilfulness. We are unable to conclude that the disputed information in the documents was more prejudicial than probative. The court was careful to redact any information in the documents that was not relevant to the charge of failure to appear, thus lessening the prejudicial effect. See *State* v. *Wild*, 43 Conn. App. 458, 464, 684 A.2d 720 (measures devised by court to reduce prejudicial effect of evidence militates against finding of abuse of discretion), cert. denied, 239 Conn. 954, 688 A.2d 326 (1996).

Moreover, even if the court improperly admitted the names of the 2001 charges, which we conclude was not the case, the error was harmless. "When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . As [our Supreme Court has] recently noted, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Jacobson*, 283 Conn. 618, 641, 930 A.2d 628 (2007). Our determination of harmlessness is guided by various factors that have

been articulated as relevant to the question of evidentiary harmlessness, "such as the importance of the [evidence] in the prosecution's case, whether the [evidence] was cumulative, the presence or absence of evidence corroborating or contradicting the [evidence] on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." (Internal quotation marks omitted.) Id., 641–42.

Section 53a-172 required the state to prove that the defendant was charged with a felony and that he wilfully failed to appear. We note first that the defendant was willing to stipulate that at the time he failed to appear, he had been charged with felonies. The court instructed the jury that the defendant was charged with felonies at the time he failed to appear. Admission of the names of the felonies, therefore, was to some extent cumulative. The jury also heard evidence that the defendant had three prior felony convictions and that he knew that he would be punished if he failed to appear. The defendant has not persuaded us, given the state's strong case against him, that the claimed error substantially affected the verdict.

The judgment is affirmed.

In this opinion GRUENDEL, J., concurred.

FLYNN, C. J., concurring. I agree with the majority's conclusion that the judgment of the trial court must be affirmed and with much of its reasoning. I write separately, however, to explain a factor that was critical to my agreement with part I of the majority decision.

"[T]o secure a conviction for failure to appear. . . the state must prove beyond a reasonable doubt that the defendant was legally ordered to appear . . . that he failed to appear and that such failure was wilful. To

prove the wilful element of failure to appear the state must prove beyond a reasonable doubt . . . that the defendant received and deliberately ignored a notice to appear . . . ." (Internal quotation marks omitted.) *State* v. *Pauling*, 102 Conn. App. 556, 568, 925 A.2d 1200, cert. denied, 284 Conn. 924, 933 A.2d 727 (2007).

In this appeal, the defendant, Charles W. Outlaw, Jr., claims that the court improperly denied his motion for a judgment of acquittal on the basis of insufficient evidence. I agree with the majority's conclusion that the evidence was sufficient to support a conviction under General Statutes § 53a-172 (a) (1) because the jury was free to make an independent assessment of the defendant's testimony. It did not have to believe that the defendant was present in the courthouse and that he left the courthouse on instruction from his attorney.[1]

My concern lies not in what the majority opinion says, but in what it does not say. On a daily basis, defendants are instructed by their attorneys, by court personnel and by prosecutors that their cases will not be going forward on that particular day or that a dismissal or nolle will be recommended and, therefore, that they need not be present and are free to leave. This avoids wasting the time of both the court and Connecticut citizens who are called to court when, for one good reason or another, cases cannot be heard or disposed of on that day or can be disposed of quickly without the presence of the defendant. Early every morning, lines form in the courthouses of our Superior

---

[1] There was no evidence before the jury that the attorney ever appeared in the New Britain courthouse on March 28, 2003, the day that the defendant was to be sentenced. Consequently, without his attorney present, the defendant could not have been sentenced on that day. See *State* v. *Williams*, 199 Conn. 30, 45, 505 A.2d 699 (1986) (under both federal and state constitutions, defendant has due process right to assistance of counsel during sentencing); *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 144, 712 A.2d 947 (1998) (sentencing process is critical stage of criminal proceeding).

Courts, filled with defendants waiting to meet with prosecutors on motor vehicle infractions. Many of these defendants are told that the case will be nolled for various reasons and that they should leave the courthouse. Unless the presiding judge has forbade such common practices a defendant should be able to rely on such statements without facing criminal charges.

In the present case, the defendant submitted to the court a request to charge the jury on the element of wilfullness, which provided in relevant part: "Wilfully, as in General Statutes § 53a-172, implies doing a forbidden act purposely in violation of the law. . . . In order to prove that the defendant wilfully failed to appear before the [c]ourt, the [s]tate must prove beyond a reasonable doubt that the defendant purposely ignored his obligation to appear in court. If you believe the defendant physically went to the courthouse on March 28, 2003, to meet his lawyer in order to attend court and thereafter, when his lawyer failed to appear in the courthouse, the defendant contacted his lawyer and was advised that his lawyer was in another court and would obtain a new court date for the defendant, then you must find that the defendant did not deliberately ignore his obligation to appear in court as scheduled." The court, however, did not include this request in its charge to the jury. In this appeal, the defendant does not claim that the court improperly failed to give this requested instruction. It is for this reason that I agree with the majority's decision.