******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DONALD BROWN
(AC 41745)

Prescott, Moll and Harper, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of assault in the first degree in connection with an altercation during which the defendant shot R, the defendant appealed to this court. *Held* that the state produced sufficient evidence to disprove the defendant's theory of self-defense beyond a reasonable doubt; the jury was free to credit R's testimony that the defendant was acting in an aggressive manner and threatening him and that he did not advance toward the defendant, which contradicted the defendant's version of events, and the jury reasonably could have concluded that the defendant's fear of death or great bodily harm was unreasonable; moreover, even if the jury determined that the defendant reasonably believed that deadly physical force or great bodily harm was going to be inflicted on him, the jury reasonably could have concluded that the defendant did not subjectively believe that deadly force was necessary to repel R's alleged attack because, although the defendant presented evidence of R's reputation for violence, the jury was free to discredit the defendant's evidence; furthermore, even if the jury concluded that the defendant did subjectively believe that deadly force was necessary to repel the perceived attack, the jury reasonably could have concluded that this belief was unreasonable as there was evidence presented that the altercation between the defendant and R inside the defendant's motor vehicle prior to the shooting never escalated beyond a shoving match, and R testified that, on exiting the vehicle, he intended to return to the house and was not charging at the defendant.

Argued March 3—officially released June 30, 2020

*Procedural History*

Information charging the defendant with two counts of the crime of assault in the first degree, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *D'Addabbo, J.*; verdict of guilty of one count of assault in the first degree; thereafter, the court, *D'Addabbo, J.*, denied the defendant's motions for judgment notwithstanding the verdict and for a new trial, and rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *William A. Adsit*, assigned counsel, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Gail Hardy*, state's attorney, and *Robin Krawczyk*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Donald Brown, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (5).[1] On appeal, the defendant claims that the evidence was insufficient to disprove beyond a reasonable doubt his asserted justification of self-defense and, accordingly, that he is entitled to a judgment of acquittal. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 2005, the defendant purchased real property located at 131 Hebron Street in Hartford (property), and rented the property to his aunt, who died in 2014. Following her death, the defendant continued using the property as a rental property and, as such, rented the property to his cousin's daughter, Qeyonna Reid (Qeyonna), and her husband, the complaining witness, Lascelles Reid (Reid). The defendant had given Qeyonna and Reid permission to renovate the property, with the understanding that they were to move into the property once the renovations were completed.

On April 24, 2015, the defendant drove his vehicle to the property. The defendant backed his vehicle into the driveway, exited the vehicle, entered the property, and proceeded to walk around the inside, observing the remodeling work that Reid had begun. The defendant was aware of the state of the renovations prior to his visit. The defendant had agreed to allow the couple only to paint the interior of the property and, consequently, felt Reid had rendered the property "unlivable" by gutting its interior. Accordingly, the defendant decided that he would express his discontent with Reid in private and, subsequently, invited Reid outside. The men entered the defendant's vehicle, which was in the driveway. Reid sat in the passenger seat, and the defendant sat in the driver's seat. The defendant began explaining to Reid that he was upset with the renovation work being done. While speaking to Reid, the defendant gestured with his hand in a pointing fashion close to Reid's face. Reid responded by swatting the defendant's finger away and blocking his subsequent attempts to gesture in such a way. As a result, a struggle ensued, with both men pushing and shoving each other inside the vehicle. During the encounter, the defendant was pinned against the A-frame of the car door as both men were "grabb[ing] each other's clothing." When the struggle ended, the defendant exited the vehicle and moved to the rear side of the vehicle. A few seconds later, Reid exited the passenger side of the vehicle and turned to find that the defendant—now also on the passenger side—was holding a gun pointed in his direction.[2] Reid asked the defendant, "what now, you're going to shoot me?" to which the defendant replied, "I'll eff you up L.R. I'll kill you." The defendant then

shot Reid one time in the abdomen. Reid fell to the ground and asked the defendant to call for help. The defendant approached a nearby stranger walking along the road and borrowed his cell phone to call 911.

After arriving at the property, the police secured the scene and observed, among other things, the defendant standing against the curb in the street. The defendant directed the responding officers to his firearm, which he had laid in the grass, and told them that he had shot Reid. The police then secured the firearm. The defendant told the police that he was unharmed, and they did not observe any injuries to him beyond a limp he had acquired from a prior work related injury.

The first responders also observed Reid lying on the ground and began treating him immediately before transporting him to Saint Francis Hospital and Medical Center for surgery. Reid suffered permanent injuries to his right leg.

Later, when the lead investigator, Detective Dennis DeMatteo, arrived at the scene, he spoke briefly with the responding officers and with the defendant, who had been placed in the back of a patrol cruiser. The defendant agreed to be transported to the Hartford police station to be interviewed. DeMatteo interviewed the defendant, who was not under arrest, for approximately two hours and forty-five minutes, during which time the defendant made, reviewed, and signed his formal statement describing the events that had occurred.

During his interview, the defendant told DeMatteo that once the struggle in the vehicle had ended, he exited the vehicle and began walking toward the front of the vehicle, at which time Reid also exited the vehicle. The defendant then began to retreat toward the rear of the vehicle. The defendant told DeMatteo that, during his retreat, he pulled out his gun out of fear "due to his [work related] injuries and the size of . . . Reid." He then moved to the passenger side of the vehicle and shot him. The defendant did not report to the police that he had suffered any injuries during the altercation and declined medical treatment at that time. DeMatteo did not witness any injuries to the defendant during the interview. After concluding the interview, the defendant allowed the police to transport him back to the property and to take photographs of his vehicle, which, at that time, still had the key in its ignition.

DeMatteo interviewed Reid on April 27, and again on April 29, 2015. After evaluating both versions of events that he had received from Reid and the defendant, and after viewing the physical evidence at the scene, DeMatteo applied for an arrest warrant and, subsequently, arrested the defendant on May 14, 2015.

On May 14, 2015, the defendant was charged by long form information with one count of assault in the first degree pursuant to § 53a-59 (a) (5) and one count of

assault in the first degree pursuant to § 53a-59 (a) (3). On November 8, 2017, after a trial, the jury returned a verdict of guilty on the charge of assault in the first degree pursuant to § 53a-59 (a) (5). Subsequently, the defendant filed posttrial motions for a judgment of acquittal notwithstanding the verdict and for a new trial. These motions were denied by the court, *D'Addabbo, J.*, on January 5 and 9, 2018, respectively. The defendant was thereafter sentenced to fourteen years of imprisonment, execution suspended after seven years, followed by five years of probation. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant claims that there was insufficient evidence at trial to satisfy the state's burden to disprove his claim of self-defense as a justification for his use of deadly force as set forth in General Statutes § 53a-19 (a). Among other things, § 53a-19 (a) looks to the reasonableness of the fear of the person claiming self-defense and the necessity of the use of deadly force.[3] In response, the state argues that it disproved the defendant's claim of self-defense beyond a reasonable doubt.[4] We agree with the state that the evidence was sufficient to disprove the defendant's claim of self-defense beyond a reasonable doubt.

We first set forth our standard of review. "On appeal, the standard for reviewing sufficiency claims in conjunction with a justification offered by the defense is the same standard used when examining claims of insufficiency of the evidence. . . . In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . Moreover, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Revels*, 313 Conn. 762, 778, 99 A.3d 1130 (2014), cert. denied,     U.S.    , 135 S. Ct. 1451, 191 L. Ed. 2d 404 (2015).

"The rules governing the respective burdens borne by the defendant and the state on the justification of self-defense are grounded in the fact that [u]nder our Penal Code, self-defense, as defined in . . . § 53a-19 (a) . . . is a defense, rather than an affirmative defense. See General Statutes § 53a-16. Whereas an affirmative defense requires the defendant to establish his claim by a preponderance of the evidence, a properly

raised defense places the burden on the state to disprove the defendant's claim beyond a reasonable doubt. See General Statutes § 53a-12. Consequently, a defendant has no burden of persuasion for a claim of self-defense; he has only a burden of production. That is, he merely is required to introduce sufficient evidence to warrant presenting his claim of self-defense to the jury . . . . Once the defendant has done so, it becomes the state's burden to disprove the defense beyond a reasonable doubt." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Alicea*, 191 Conn. App. 421, 446–47, 215 A.3d 184, cert. granted on other grounds, 333 Conn. 937, 219 A.3d 373 (2019).

"Whether the defense of the justified use of force, properly raised at trial, has been disproved by the state is a question of fact for the jury, to be determined from all the evidence in the case and the reasonable inferences drawn from that evidence. . . . As long as the evidence presented at trial was sufficient to allow the jury reasonably to conclude that the state had met its burden of persuasion, the verdict will be sustained." (Internal quotation marks omitted.) *State* v. *Pranckus*, 75 Conn. App. 80, 85–86, 815 A.2d 678, cert. denied, 263 Conn. 905, 819 A.2d 840 (2003).

Our Supreme Court has interpreted § 53a-19 (a) to mean that "a person may justifiably use *deadly* physical force in self-defense only if he *reasonably* believes *both* that (1) his attacker is using or about to use deadly physical force against him, or is inflicting or about to inflict great bodily harm, *and* (2) that deadly physical force is necessary to repel such attack." (Emphasis in original.) *State* v. *Prioleau*, 235 Conn. 274, 285–86, 664 A.2d 743 (1995).

The defendant argues that his self-defense claim did not depend on credibility determinations by the jury because the facts at trial were undisputed. In response, the state argues that the jury was permitted to make credibility determinations in arriving at its verdict because material facts presented by both sides at trial were in dispute. We note at the outset that, contrary to the defendant's assertion, the trial evidence presented by both parties undeniably contains contradictions and disputes that the jury was entitled to evaluate and credit accordingly. "[T]he [jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Marsala*, 44 Conn. App. 84, 96, 688 A.2d 336, cert. denied, 240 Conn. 912, 690 A.2d 400 (1997). Importantly, the evidence relevant to both the reasonableness of the defendant's fear and the necessity of deadly force consisted of contradictory testimony

regarding a number of key facts. Specifically, the jury was free to evaluate disputed facts concerning the defendant's actions and demeanor inside the vehicle, as well as what ensued once the men exited the vehicle.

With respect to the events inside the vehicle, Reid testified that he engaged the defendant physically only when the defendant began pointing his finger in close proximity to Reid's face. Reid further testified that the defendant was as equally involved in the physical altercation as he had been. The defendant testified that Reid was the initial aggressor and that Reid forcefully hit the defendant in the head and pushed him against the driver's side door frame. The defendant presented evidence, through the testimony of Detective Candace Hendrix, that the water bottle in the center console of the front seat was tilted toward the driver's side, as if it were pushed that way by Reid's directional force during the struggle.

With respect to the events that occurred once the men had exited the vehicle, the defendant testified that he had exited the vehicle and leaned against the driver's side while Reid was still in the vehicle. The defendant testified that when he saw Reid exit the vehicle and begin to move toward its rear, he moved to the front of the vehicle in an attempt to put the car between himself and Reid. The defendant also testified that, prior to discharging his weapon, Reid was chasing him and threatening to kill him. Reid, however, testified that he had exited the vehicle with the intent of going inside to retrieve his young nephew, whom he had been caring for that afternoon, when he turned around and was immediately faced with the defendant pointing a gun in his direction. Reid testified that the defendant told him, "I'll eff you up L.R. I'll kill you," and that the defendant immediately shot him. Reid also testified that, while he was lying on the ground after being shot, the defendant told him that if he moved he would "blow [his] head off." The defendant testified that, prior to shooting Reid, he only warned him to stay back but Reid continued to move toward him. The testimonies of Reid and the defendant were clearly in dispute and, as such, were subject to the credibility determinations of the jury.

In addition, at trial, the defendant was cross-examined about contradictions between his testimony on the stand and statements he made in his official police statement, as well as to DeMatteo during his police interview.[5] When questioned about these contradictions, the defendant testified that the discrepancies were the result of his being "numb" and "in shock" from the events when he was interviewed. Regarding his statement, he testified that he had "breezed through" giving and reviewing the statement and opined that he "[didn't] know if things were [clear] at that time" for him because he was in a daze. The state impeached the

defendant's credibility with the testimony of DeMatteo, who testified that the defendant never appeared dazed, confused, or in shock during his interview. DeMatteo also detailed the thorough process of, and the defendant's compliance in, giving his statement. "It is fundamental that for the purpose of impeaching the credibility of his testimony, a witness may be cross-examined as to statements made out of court or in other proceedings which contradict those made upon direct examination. . . . This is based on the notion that talking one way on the stand, and another way previously, raises a doubt as to the truthfulness of both statements. . . . The purpose of impeachment is to undermine the credibility of a witness so that the trier will disbelieve him and disregard his testimony." (Citation omitted; internal quotation marks omitted.) *State* v. *Valentine*, 240 Conn. 395, 411, 692 A.2d 727 (1997).

In assessing the defendant's claim on appeal, we are mindful of our standard of review, which instructs us to consider only whether there is a reasonable view of the evidence that would support the jury's verdict and not whether there exists an alternative reasonable view that would support a not guilty verdict. See *State* v. *Leniart*, 166 Conn. App. 142, 170, 140 A.3d 1026 (2016), rev'd in part on other grounds, 333 Conn. 88, 215 A.3d 1104 (2019). Additionally, "[t]his court must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *State* v. *Outlaw*, 108 Conn. App. 772, 779–80, 949 A.2d 544, cert. denied, 289 Conn. 915, 957 A.2d 880 (2008).

The defendant's claim is that he was justified in using deadly force because he was defending himself against an aggressor, Reid, whom he feared would seriously injure or kill him as a result of their altercation. At trial, however, the jury was provided with evidence that contradicted the defendant's claim of Reid's aggressiveness and called into question the reasonableness of the defendant's fear and the necessity of his use of deadly force. In particular, the jury was presented with conflicting testimony by Reid, who testified that the defendant was acting in an aggressive manner and threatening him, and that he did not advance toward the defendant outside the vehicle in the way the defendant claims he had. The jury, presented with two versions of the events, was free to credit Reid's description of the altercation. Accordingly, we conclude that the jury reasonably could have determined, on the basis of the evidence and its credibility assessments, that the defendant's fear of death or great bodily harm was unreasonable.

Even if we were to find that the jury determined that the defendant reasonably believed that deadly physical force or great bodily harm was going to be used or inflicted on him, we conclude that the jury had sufficient

evidence reasonably to find that the defendant's use of deadly force was unnecessary under the circumstances. "We repeatedly have indicated that the test a jury must apply in analyzing the second requirement, i.e., that the defendant reasonably believed that deadly force, as opposed to some lesser degree of force, was necessary to repel the victim's alleged attack, is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable." (Internal quotation marks omitted.) *State* v. *Pranckus*, supra, 75 Conn. App. 90.

The subjective-objective inquiry "requires that the jury make two separate affirmative determinations in order for the defendant's claim of self-defense to succeed. First, the jury must determine whether, on the basis of all of the evidence presented, the defendant in fact had believed that he had needed to use deadly physical force, as opposed to some lesser degree of force, in order to repel the victim's alleged attack. . . .

"If the jury determines that the defendant had not believed that he had needed to employ deadly physical force to repel the victim's attack, the jury's inquiry ends, and the defendant's self-defense claim must fail. If, however, the jury determines that the defendant in fact had believed that the use of deadly force was necessary, the jury must make a further determination as to whether *that belief* was reasonable, from the perspective of a reasonable person in the defendant's circumstances." (Emphasis in original; internal quotation marks omitted.) *State* v. *Scarpiello*, 40 Conn. App. 189, 206–207, 670 A.2d 856, cert. denied, 236 Conn. 921, 674 A.2d 1327 (1996).

The defendant presented evidence of Reid's reputation for violence through the testimony of Reid's cousin, Natasha Baldwin, as well as through his own testimony. Baldwin testified that Reid "has a violent temper. That includes physical violence toward others, family members, friends." The defendant testified that he felt that deadly force was required to repel Reid's attack because of Reid's size and aggressiveness. The defendant described Reid's reputation in the community as being "[h]ot tempered, fight you on a drop of a dime, just a very unsavory person." Despite all of this, the jury was free to discredit the defendant's evidence and testimony on the basis of its credibility determinations in light of the other evidence admitted during trial. Particularly, Reid's testimony that he did not intend on continuing the fight outside the vehicle, and that he believed "[c]ooler heads prevail" could persuade a jury to disbelieve the defendant's claims about Reid's temper. On that basis, the jury reasonably could have concluded that the defendant did not subjectively believe that deadly force was necessary to repel Reid's alleged

attack.

Even if the jury had concluded that the defendant did subjectively believe deadly force was necessary to repel the perceived attack by Reid, we conclude that the jury could reasonably have concluded that that subjective belief was objectively unreasonable. As previously noted, the evidence at trial revealed that the altercation between the defendant and Reid inside the vehicle never escalated beyond a shoving match. Further, Reid testified that he had no knowledge of the defendant's weapon, nor does the evidence reveal that Reid had any weapon of his own. Finally, Reid testified that, on exiting the car, he had intended to return to the house to retrieve his nephew and was not charging at the defendant. On the basis of this evidence, the jury reasonably could conclude that even if the defendant subjectively believed deadly force was necessary to repel Reid's attack, that belief was an unreasonable one.

Accordingly, we conclude that the jury had before it sufficient evidence to determine that the state had disproved the defendant's asserted justification of self-defense beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (5) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of the discharge of a firearm."

Count two of the long form information also charged the defendant with assault in the first degree in violation of § 53a-59 (a) (3). The court instructed the jury that the state had charged the counts in the alternative, that it could not find the defendant guilty of both counts, and that it should proceed to count two only if it found the defendant not guilty on count one. Because the jury found the defendant guilty of count one, alleging intentional conduct, it did not return a verdict on the second count alleging reckless conduct.

[2] The weapon the defendant used was a Sig Sauer P228 nine millimeter semiautomatic pistol. The defendant had a permit to carry the pistol, which was registered to him, at the time of the incident.

[3] General Statutes § 53a-19 (a) provides: "Except as provided in subsections (b) and (c) of this section, a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

[4] The state further argues, in the alternative, that it disproved the defendant's claim of self-defense beyond a reasonable doubt under § 53a-19 (b), which imposes a duty to retreat on the person claiming self-defense. See General Statutes § 53a-19 (b). Because we conclude that the state proffered sufficient evidence to disprove the defendant's claim of self-defense under § 53a-19 (a) beyond a reasonable doubt, we do not address the state's alternative ground for affirmance.

[5] The defendant's official police statement and the video recording of his police interview were not entered into evidence, but were testified to by DeMatteo on direct examination during the state's case-in-chief, and by the defendant on cross-examination during the defense's case-in-chief.

With regard to the interview, DeMatteo testified that the defendant said he did not feel any pain when Reid had him pressed against the door frame. On the witness stand, however, the defendant testified both that he had suffered injuries and that he had told the police about them that day. Addi-

tionally, in his statement, he said that, leading up to the encounter, he was upset with Reid because he was losing money on the property due to Reid's renovations. At trial, he testified that he was not upset with Reid for those reasons when he initiated the conversation with Reid.